1    Tyler J. Woods (State Bar No. 232464)
     twoods@trialnewport.com
2    Richard H. Hikida (State Bar No. 196149)
     rhikida@trialnewport.com
3    Scott J. Ferrell (State Bar No. 202091)
     sferrell@trialnewport.com
4    **NEWPORT TRIAL GROUP**
   A Professional Corporation
5    4100 Newport Place, Suite 800
   Newport Beach, CA 92660
6    Tel: (949) 706-6464
   Fax: (949) 706-6469
7

   Attorneys for Plaintiff
8

9             **UNITED STATES DISTRICT COURT**

10          **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11   THERMOLIFE INTERNATIONAL, LLC, | Case No. **'13 CV 0651 WQH WMC** |
| 12         Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| 13         vs. | **JURY TRIAL DEMANDED** |
| 14   MYOGENIX CORP.; GNC CORPORATION; GENERAL | |
| 15   NUTRITION CENTERS, INC.; and GENERAL NUTRITION | |
| 16   CORPORATION, | |
| 17         Defendants | |

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Thermolife International, LLC ("Plaintiff") hereby alleges for its Complaint against Myogenix Corp.; GNC Corporation; General Nutrition Centers, Inc.; and General Nutrition Corporation ("Defendants"), on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows:

## I.   THE PARTIES

1.    Plaintiff is a limited liability company organized and existing under the laws of Arizona, with a place of business at 1811 Ocean Front Walk in Venice, California, 90291.

2.    Plaintiff is the exclusive licensee of the following United States Patents:

     a. Patent No. 6,646,006, titled "Enhancement of Vascular Function By Modulation of Endogenous Nitric Oxide Production or Activity";

     b. Patent No. 6,117,872, titled "Enhancement of Exercise Performance by Augmenting Endogenous Nitric Oxide Production or Activity";

     c. Patent No. 5,891,459, titled "Enhancement of Vascular Function By Modulation of Endogenous Nitric Oxide Production or Activity"; and

     d. Patent No. 7,452,916, titled "Enhancement of Vascular Function By Modulation of Endogenous Nitric Oxide Production or Activity."

3.    The above patents are owned by The Board of Trustees of the Leland Stanford Junior University ("Stanford University") and Plaintiff exclusively licenses the patents from Stanford University.

4.    The above patents are referred to herein as the "patents in suit."

5.    Plaintiff has been given the right by Stanford University to institute suit with respect to infringement of the patents in suit, including this suit against Defendants.

6.    Myogenix Corp. is a corporation organized and existing under the laws of California with a principal place of business at 2309 A Street in Santa Maria, California, 93455.

/ / /

COMPLAINT FOR PATENT INFRINGEMENT

7.     GNC Corporation; General Nutrition Centers, Inc.; and General Nutrition Corporation are corporations incorporated under the laws of the State of Delaware with places of business, meaning retail establishments, at, among other places:

- 546 Horton Plaza in San Diego, California, 92101 (Store #3128);
- 658 University Avenue in San Diego, California, 92103 (Store #9117);
- 1640 Camino Del Rio North in San Diego, California, 92108 (Store #280);
- 3369 Rosecrans Street, Suite 11-B in San Diego, California, 92110 (Store #5189);
- 6165 El Cajon Blvd. in San Diego, California, 92115 (Store #9035);
- 3030 Plaza Bonita Road, Suite 2282 in National City, California, 91950 (Store #875);
- 555 Broadway, Suite 1028 in Chula Vista, California, 91910 (Store #2328);
- 4223 Genessee Avenue in San Diego, California, 92117 (Store #774);
- 10645-G Tierrasanta Boulevard in San Diego, California, 92124 (Store #7148);
- 4389 B Claremont Drive in San Diego, California, 92117 (Store #6380);
- 4545 La Jolla Village Drive, E-5 in San Diego, California, 92122 (Store #537);
- 425 Parkway Plaza in El Cajon, California, 92020 (Store #448); and
- 2514 Jamacha Road, Suite 501 in El Cajon, California, 92019 (Store #2349).

8.     Defendants GNC Corporation; General Nutrition Centers, Inc.; and General Nutrition Corporation are affiliated companies that derive their revenues principally from product sales through "GNC"-branded company-owned and franchisee-owned stores and on the internet, such as through www.gnc.com, and have a common headquarters at 300 6th Avenue in Pittsburgh, Pennsylvania, 15222, though

they do extensive business in and generate significant revenues from their widespread business operations in the Southern District of California.

## II.   JURISDICTION AND VENUE

9.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

11.     This Court has personal jurisdiction over Defendants.  By way of example and without limitation, Defendants, directly or through intermediaries (including distributors, retailers, and others), make, manufacture, ship, distribute, advertise, market, offer for sale, and/or sell dietary supplement products that infringe on one or more claims of the patents in suit (hereinafter the "accused products"), which include without limitation products sold under the "HyperShock" brand name, in the United States, the State of California, and the Southern District of California.

12.     By way of further example and without limitation, Defendants GNC Corporation; General Nutrition Centers, Inc.; and General Nutrition Corporation have multiple places of business throughout this District.

13.     By way of further example and without limitation, Defendants have purposefully and voluntarily placed the accused products into the stream of commerce with the expectation that they will be purchased in the Southern District of California, and the products are actually purchased in the Southern District of California.

## III.   THE DEFENDANT'S INFRINGEMENTS

14.     Defendants have committed the tort of patent infringement within the State of California, and more particularly, within the Southern District of California, by virtue of the fact that Defendants have formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold the accused products in this District, and continue to do so.

/ / /

COMPLAINT FOR PATENT INFRINGEMENT

## A.    DIRECT INFRINGEMENTS

15.    Defendants' employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities, have taken, used, and orally administered the accused products.

16.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of one or more of the patents in suit.

17.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for certain purposes that, by virtue of their inclusion in the products for such purposes, infringe one or more claims of one or more of the patents in suit, and as a result, when Defendants' employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products, they are practicing the methods disclosed in those claims.

18.    These infringing ingredients, and/or combinations thereof, include, without limitation, Micronized L-Arginine, L-Norvaline, and Citrulline Malate, as set forth on Defendants' labels for Hypershock.

19.    The purposes for which these ingredients are included in the accused products are, without limitation, to enhance nitric oxide production, to improve nitric oxide activity, to produce nitric oxide, to boost nitric oxide levels in the body, and to enhance physical performance.

20.    For instance, as just as an example, the labels and/or advertisements for Hypershock states that it is formulated for "nitric oxide pump, vascularity, and nutrient delivery" and that end-users of the products can "experience vein swelling pumps with 8 hour sustained release nitric oxide."

COMPLAINT FOR PATENT INFRINGEMENT

21.     Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by Defendants or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claim of one or more of the patents in suit, and these employees, agents, representatives and other persons sponsored by Defendants or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

22.     Therefore, Defendants are direct infringers of one or more claims of one or more of the patents in suit, and Defendants practice the methods as set forth in one or more claims of one or more of the patents in suit.

## B.   **INDIRECT INFRINGEMENTS**

23.     End-users of Defendants' accused products are also direct infringers of one or more claims of one or more of the patents in suit.

24.     End-users of Defendants' accused products have taken, used, and orally administered the accused products.

25.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of one or more of the patents in suit.

26.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendants to include specific ingredients for certain purposes that, because of their inclusion in the products for such purposes, infringe one or more claims of one or more of the patents in suit, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in those claims.

27.     Defendants' labels and advertising for the accused products explain the elements and essential elements of one or more of the methods disclosed in the patents

in suit, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

28.   Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of these patents, and have in fact urged them to do so.

29.   The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods of the patents in suit, that do not infringe upon such methods.

30.   The inclusion of the specific infringing compounds in the products is material to practicing such methods.

31.   Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

32.   Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes of practicing the claimed methods, by having them orally ingest the compounds disclosed in such claims.

33.   Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of the patents in suit.

34.   Defendants have direct, firsthand knowledge of the patents in suit.

35.   For example and without limitation, Defendants have had knowledge of the patents in suit since November 2006, when an ongoing settlement of a patent infringement case relating to at least some of the patents in suit against Herbalife, a well-known company in Defendants' industry, was announced in press releases issued

in a highly publicized manner. Defendants' employees, agents, and representatives saw the press releases and were aware of the settlement and thus the patents in suit.

36.    By way of further example and without limitation, Defendants GNC Corporation; General Nutrition Centers, Inc.; and General Nutrition Corporation offer to sell and sell products manufactured and sold by Daily Wellness and Vitality Research Labs, which mark on their labels the patents in suit. Thus, these Defendants have knowledge of the patents in suit.

37.    By way of further example and without limitation, Defendant Myogenix Corp. has sold its products through retailers, including online retailers, and those retailers have sold other companies' products whose labels and/or advertisements have been prominently marked with one or more of the patents in suit, by patent number, including without limitation the products manufactured and sold by Herbalife, Daily Wellness, and Vitality Research Labs. Defendant Myogenix Corp.'s employees, agents, and representatives have seen these labels and advertisements and, thus, Defendant Myogenix Corp. has knowledge of the patents in suit.

38.    Defendants have brazenly and willfully decided to infringe the patents in suit despite knowledge of the patents' existence and their knowledge of the accused products' infringements of the patents.

39.    At a minimum, and in the alternative, Plaintiff pleads that Defendants willfully blinded themselves to the infringing nature of the accused products' sales.

40.    Defendants have not ceased their own direct infringements, nor their contributory infringements or inducements of infringements by end-users, despite their knowledge of the patents in suit and their infringing activities with respect to the patents in suit.

41.    Plaintiff also believes Defendants, or one of them, are infringing on one or more claims of United States Patent No. 5,428,070 and Patent No. 5,945,452, patents which Defendants have had prior knowledge of and are also licensed exclusively to Plaintiff by Stanford University, to include the right to sue for infringement, and

1   Plaintiff will seek to amend this Complaint once facts confirming that belief are

2   ascertained.

### IV.   FIRST CAUSE OF ACTION

#### Infringement of U.S. Patent No. 6,646,006

42.   Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

43.   Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 6,646,006 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

44.   In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringement include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 6,646,006, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

45.   Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 6,646,006.

46.   End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 6,646,006.

47.   End-users of Defendants' accused products have taken, used, and orally administered the accused products.

48.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 6,646,006.

49.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 6,646,006, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

50.    Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 6,646,006, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

51.    Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 6,646,006, and have in fact urged them to do so.

52.    The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

53.    The inclusion of these specific infringing compounds in the products is material to practicing such methods.

54.    Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase

and orally administer the accused products to practice such methods, and have done so in the past.

55.    Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 6,646,006, by having them orally ingest the compounds disclosed in such claims.

56.    Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 6,646,006.

57.    Defendants also have direct, firsthand knowledge of United States Patent No. 6,646,006.

58.    Defendants' activities have been without express or implied license by Plaintiff.

59.    As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

60.    As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

61.    Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## V.    SECOND CAUSE OF ACTION

### Infringement of U.S. Patent No. 5,891,459

62.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

63.    Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United

COMPLAINT FOR PATENT INFRINGEMENT

States Patent No. 5,891,459 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

64.    In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringement include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 5,891,459, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

65.    Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 5,891,459.

66.    End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 5,891,459.

67.    End-users of Defendants' accused products have taken, used, and orally administered the accused products.

68.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 5,891,459.

69.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 5,891,459, and as a result,

1  when end-users of Defendants' accused products orally administer the accused
2  products, they are practicing the methods disclosed in one or more claims of that patent.

3      70.    Defendants' labels and advertising for the accused products explain the
4  elements and essential elements of the methods disclosed in United States Patent No.
5  5,891,459, and those labels and advertising statements encourage, urge, and induce the
6  accused products' end-users to purchase and orally ingest the products to practice those
7  methods, and end-users do practice those methods.

8      71.    Defendants have therefore specifically intended to cause these end-users to
9  directly infringe the claimed methods of United States Patent No. 5,891,459, and have
10 in fact urged them to do so.

11     72.    The accused products are not suitable for non-infringing uses, and none of
12 Defendants' labels or advertisements for the accused products disclose any uses for the
13 products, nor for the compounds disclosed in the claimed methods, that do not infringe
14 upon such methods.

15     73.    The inclusion of these specific infringing compounds in the products is
16 material to practicing such methods.

17     74.    Defendants have knowledge that the accused products are especially
18 adapted by end-users of the products for the practicing of such methods, and, indeed,
19 Defendants encourage, urge, and induce the accused products' end-users to purchase
20 and orally administer the accused products to practice such methods, and have done so
21 in the past.

22     75.    Defendants have intentionally and knowingly induced, encouraged, and
23 urged end-users of the accused products to purchase and orally administer the accused
24 products for the purposes disclosed in one or more claims of United States Patent No.
25 5,891,459, by having them orally ingest the compounds disclosed in such claims.

26     76.    Defendants have knowledge of the fact that the accused products,
27 particularly as administered, infringe on one or more claims of United States Patent No.
28 5,891,459.

COMPLAINT FOR PATENT INFRINGEMENT

77.    Defendants also have direct, firsthand knowledge of United States Patent No. 5,891,459.

78.    Defendants' activities have been without express or implied license by Plaintiff.

79.    As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

80.    As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

81.    Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VI.    THIRD CAUSE OF ACTION

### Infringement of U.S. Patent No. 7,452,916

82.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

83.    Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 7,452,916 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

84.    In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringement include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 7,452,916, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and

Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

85.   Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 7,452,916.

86.   End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 7,452,916.

87.   End-users of Defendants' accused products have taken, used, and orally administered the accused products.

88.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 7,452,916.

89.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 7,452,916, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

90.   Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 7,452,916, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

91.   Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 7,452,916, and have in fact urged them to do so.

92.   The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

93.   The inclusion of these specific infringing compounds in the products is material to practicing such methods.

94.   Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

95.   Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 7,452,916, by having them orally ingest the compounds disclosed in such claims.

96.   Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 7,452,916.

97.   Defendants also have direct, firsthand knowledge of United States Patent No. 7,452,916.

98.   Defendants' activities have been without express or implied license by Plaintiff.

99.   As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

100.   As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

101.   Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VII.   FOURTH CAUSE OF ACTION

### Infringement of U.S. Patent No. 6,117,872

102.   Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

103.   Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 6,117,872 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

104.   In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringement include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 6,117,872, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

105.   Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 6,117,872.

106.   End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 6,117,872.

107.   End-users of Defendants' accused products have taken, used, and orally administered the accused products.

108.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 6,117,872.

109.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 6,117,872, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

110.   Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 6,117,872, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

111.   Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 6,117,872, and have in fact urged them to do so.

112.   The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

113.   The inclusion of these specific infringing compounds in the products is material to practicing such methods.

114.   Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed,

Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

115.   Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 6,117,872, by having them orally ingest the compounds disclosed in such claims.

116.   Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 6,117,872.

117.   Defendants also have direct, firsthand knowledge of United States Patent No. 6,117,872.

118.   Defendants' activities have been without express or implied license by Plaintiff.

119.   As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

120.   As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

121.   Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of judgment against Defendants as follows:

1.   A declaration that Defendants have infringed the patents in suit, under 35 U.S.C. §§ 271 *et seq.*;

3.     That injunctions, preliminary and permanent, be issued by this Court restraining Defendants, their respective officers, agents, servants, directors, and employees, and all persons in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of, the patents in suit;

4.     That Defendants be required to provide to Plaintiff an accounting of all gains, profits, and advantages derived by Defendants' infringement of the patents in suit, and that Plaintiff be awarded damages adequate to compensate Plaintiff for the wrongful infringing acts by Defendants, in accordance with 35 U.S.C. § 284;

5.     That the damages awarded to Plaintiff with regard to the patents in suit be increased up to three times, in view of Defendants' willful infringement, in accordance with 35 U.S.C. § 284;

6.     That this case be declared to be exceptional in favor of Plaintiff under 35 U.S.C. § 285, and that Plaintiff be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action;

7.     That Plaintiff be awarded its interest and costs of suit incurred in this action;

8.     Compensatory damages;

9.     Punitive damages; and

10.     That Plaintiff be awarded such other and further relief as this Court may deem just and proper.

Respectfully submitted,
NEWPORT TRIAL GROUP
A Professional Corporation

Dated: March 19, 2013

By:   Tyler J. Woods
      Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial for all issues in this case that properly are subject to a jury trial.

Respectfully submitted,

NEWPORT TRIAL GROUP
A Professional Corporation

Dated: March 19, 2013

By:   Tyler J. Woods
        Attorneys for Plaintiff

**COMPLAINT FOR PATENT INFRINGEMENT**

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
THERMOLIFE INTERNATIONAL, LLC

**DEFENDANTS**
Myogenix Corp.; GNC Corporation; General Nutrition Centers, Inc.; and General Nutrition Corporation

**(b)** County of Residence of First Listed Plaintiff    Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Santa Barbara
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Tyler J Woods / Richard H Hikida
Newport Trial Group
4100 Newport Place, Suite 800, Newport Beach, CA 92660

Attorneys *(If Known)*

**'13CV0651 WQHWMC**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                   *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☒ 830 Patent<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC §§1331, 1338, 1367;  15:1126
Brief description of cause:
Patent infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  3/19/13

SIGNATURE OF ATTORNEY OF RECORD   *[signature]* Woods

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 12/12)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; NOTE: **federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.