Tyler J. Woods (State Bar No. 232464)
 twoods@trialnewport.com
Richard H. Hikida (State Bar No. 196149)
 rhikida@trialnewport.com
Scott J. Ferrell (State Bar No. 202091)
 sferrell@trialnewport.com
**NEWPORT TRIAL GROUP**
A Professional Corporation
4100 Newport Place, Suite 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC, and THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>                    Plaintiffs,<br><br>                    vs.<br><br>MYOGENIX CORP.; GNC CORPORATION; GENERAL NUTRITION CENTERS, INC.; and GENERAL NUTRITION CORPORATION,<br><br>                    Defendants | Case No.  13-CV-651 JLS (MDD)<br><br>**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |
| AND ALL RELATED CASES | |

Plaintiffs Thermolife International, LLC ("ThermoLife") and The Board of Trustees of the Leland Stanford Junior University ("Stanford University") (collectively, "Plaintiffs") hereby allege for their Complaint against GNC Corporation; General Nutrition Centers, Inc.; and General Nutrition Corporation ("Defendants"), on personal knowledge as to their own activities and on information and belief as to the activities of others, as follows:

## I.   THE PARTIES

1.     ThermoLife is a limited liability company organized and existing under the laws of Arizona, with a place of business at 1811 Ocean Front Walk in Venice, California, 90291.

2.     Stanford University is an institution of higher education having powers under the laws of the State of California, with a place of business at 1705 El Camino Real in Palo Alto, California, 94306-1106.

3.     ThermoLife is the exclusive licensee of the following United States Patents:

    a. Patent No. 6,646,006, titled "Enhancement of Vascular Function By Modulation of Endogenous Nitric Oxide Production or Activity";

    b. Patent No. 6,117,872, titled "Enhancement of Exercise Performance by Augmenting Endogenous Nitric Oxide Production or Activity";

    c. Patent No. 5,891,459, titled "Enhancement of Vascular Function By Modulation of Endogenous Nitric Oxide Production or Activity"; and

    d. Patent No. 7,452,916, titled "Enhancement of Vascular Function By Modulation of Endogenous Nitric Oxide Production or Activity."

4.     The above patents are owned by Stanford University and ThermoLife exclusively licenses the patents from Stanford University.  ThermoLife is pursuing this action and ThermoLife has the right to join Stanford as a necessary party.

5.     The above patents are referred to herein as the "patents in suit."

6.     ThermoLife has been given the right by Stanford University to institute suit with respect to infringement of the patents in suit, including this suit against Defendants.

7.      GNC Corporation; General Nutrition Centers, Inc.; and General Nutrition Corporation are corporations incorporated under the laws of the State of Delaware with places of business, meaning retail establishments, at, among other places:

- 546 Horton Plaza in San Diego, California, 92101 (Store #3128);
- 658 University Avenue in San Diego, California, 92103 (Store #9117);
- 1640 Camino Del Rio North in San Diego, California, 92108 (Store #280);
- 3369 Rosecrans Street, Suite 11-B in San Diego, California, 92110 (Store #5189);
- 6165 El Cajon Blvd. in San Diego, California, 92115 (Store #9035);
- 3030 Plaza Bonita Road, Suite 2282 in National City, California, 91950 (Store #875);
- 555 Broadway, Suite 1028 in Chula Vista, California, 91910 (Store #2328);
- 4223 Genessee Avenue in San Diego, California, 92117 (Store #774);
- 10645-G Tierrasanta Boulevard in San Diego, California, 92124 (Store #7148);
- 4389 B Claremont Drive in San Diego, California, 92117 (Store #6380);
- 4545 La Jolla Village Drive, E-5 in San Diego, California, 92122 (Store #537);
- 425 Parkway Plaza in El Cajon, California, 92020 (Store #448); and
- 2514 Jamacha Road, Suite 501 in El Cajon, California, 92019 (Store #2349).

8.      Defendants GNC Corporation; General Nutrition Centers, Inc.; and General Nutrition Corporation are affiliated companies that derive their revenues principally from product sales through "GNC"-branded company-owned and franchisee-owned stores and on the internet, such as through www.gnc.com, and have a common headquarters at 300 6th Avenue in Pittsburgh, Pennsylvania, 15222, though they do extensive business in and generate significant revenues from their widespread business operations in the Southern District of California.

## II.   JURISDICTION AND VENUE

9.   This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

10.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

11.   This Court has personal jurisdiction over Defendants. By way of example and without limitation, Defendants, directly or through intermediaries (including distributors, retailers, and others), make, manufacture, ship, distribute, advertise, market, offer for sale, and/or sell dietary supplement products that infringe on one or more claims of the patents in suit (hereinafter the "accused products"), which include without limitation products sold under the "HyperShock" brand name, in the United States, the State of California, and the Southern District of California.

12.   By way of further example and without limitation, Defendants GNC Corporation; General Nutrition Centers, Inc.; and General Nutrition Corporation have multiple places of business throughout this District.

13.   By way of further example and without limitation, Defendants have purposefully and voluntarily placed the accused products into the stream of commerce with the expectation that they will be purchased in the Southern District of California, and the products are actually purchased in the Southern District of California.

## III.   THE DEFENDANT'S INFRINGEMENTS

14.   Defendants have committed the tort of patent infringement within the State of California, and more particularly, within the Southern District of California, by virtue of the fact that Defendants have formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold the accused products in this District, and continue to do so.

## A.   DIRECT INFRINGEMENTS

15.   Defendants' employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and

marketing activities, have taken, used, and orally administered the accused products.

16.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of one or more of the patents in suit.

17.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for certain purposes that, by virtue of their inclusion in the products for such purposes, infringe one or more claims of one or more of the patents in suit, and as a result, when Defendants' employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products, they are practicing the methods disclosed in those claims.

18.     These infringing ingredients, and/or combinations thereof, include, without limitation, Micronized L-Arginine, L-Norvaline, and Citrulline Malate, as set forth on Defendants' labels for Hypershock.

19.     The purposes for which these ingredients are included in the accused products are, without limitation, to enhance nitric oxide production, to improve nitric oxide activity, to produce nitric oxide, to boost nitric oxide levels in the body, and to enhance physical performance.

20.     For instance, as just as an example, the labels and/or advertisements for Hypershock states that it is formulated for "nitric oxide pump, vascularity, and nutrient delivery" and that end-users of the products can "experience vein swelling pumps with 8 hour sustained release nitric oxide."

21.     Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by Defendants or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more

claim of one or more of the patents in suit, and these employees, agents, representatives and other persons sponsored by Defendants or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

22.    Therefore, Defendants are direct infringers of one or more claims of one or more of the patents in suit, and Defendants practice the methods as set forth in one or more claims of one or more of the patents in suit.

**B.    <u>INDIRECT INFRINGEMENTS</u>**

23.    End-users of Defendants' accused products are also direct infringers of one or more claims of one or more of the patents in suit.

24.    End-users of Defendants' accused products have taken, used, and orally administered the accused products.

25.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of one or more of the patents in suit.

26.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendants to include specific ingredients for certain purposes that, because of their inclusion in the products for such purposes, infringe one or more claims of one or more of the patents in suit, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in those claims.

27.    Defendants' labels and advertising for the accused products explain the elements and essential elements of one or more of the methods disclosed in the patents in suit, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

/ / /

28.    Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of these patents, and have in fact urged them to do so.

29.    The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods of the patents in suit, that do not infringe upon such methods.

30.    The inclusion of the specific infringing compounds in the products is material to practicing such methods.

31.    Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

32.    Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes of practicing the claimed methods, by having them orally ingest the compounds disclosed in such claims.

33.    Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of the patents in suit.

34.    Defendants have direct, firsthand knowledge of the patents in suit.

35.    For example and without limitation, Defendants have had knowledge of the patents in suit since November 2006, when an ongoing settlement of a patent infringement case relating to at least some of the patents in suit against Herbalife, a well-known company in Defendants' industry, was announced in press releases issued in a highly publicized manner.  Defendants' employees, agents, and representatives saw the press releases and were aware of the settlement and thus the patents in suit.

/ / /

36.    By way of further example and without limitation, Defendants GNC Corporation; General Nutrition Centers, Inc.; and General Nutrition Corporation offer to sell and sell products manufactured and sold by Daily Wellness and Vitality Research Labs, which mark on their labels the patents in suit.  Thus, these Defendants have knowledge of the patents in suit.

37.    Defendants have brazenly and willfully decided to infringe the patents in suit despite knowledge of the patents' existence and their knowledge of the accused products' infringements of the patents.

38.    At a minimum, and in the alternative, Plaintiff pleads that Defendants willfully blinded themselves to the infringing nature of the accused products' sales.

39.    Defendants have not ceased their own direct infringements, nor their contributory infringements or inducements of infringements by end-users, despite their knowledge of the patents in suit and their infringing activities with respect to the patents in suit.

40.    Plaintiff also believes Defendants, or one of them, are infringing on one or more claims of United States Patent No. 5,428,070 and Patent No. 5,945,452, patents which Defendants have had prior knowledge of and are also licensed exclusively to Plaintiff by Stanford University, to include the right to sue for infringement, and Plaintiff will seek to amend this Complaint once facts confirming that belief are ascertained.

## IV.   <u>FIRST CAUSE OF ACTION</u>

### Infringement of U.S. Patent No. 6,646,006

41.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

42.    Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 6,646,006 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

/ / /

43.     In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringement include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 6,646,006, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

44.     Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 6,646,006.

45.     End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 6,646,006.

46.     End-users of Defendants' accused products have taken, used, and orally administered the accused products.

47.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 6,646,006.

48.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 6,646,006, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

49.     Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 6,646,006, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

50.     Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 6,646,006, and have in fact urged them to do so.

51.     The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

52.     The inclusion of these specific infringing compounds in the products is material to practicing such methods.

53.     Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

54.     Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 6,646,006, by having them orally ingest the compounds disclosed in such claims.

55.     Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 6,646,006.

56.     Defendants also have direct, firsthand knowledge of United States Patent No. 6,646,006.

57.    Defendants' activities have been without express or implied license by Plaintiff.

58.    As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

59.    As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

60.    Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## V.    SECOND CAUSE OF ACTION

## Infringement of U.S. Patent No. 5,891,459

61.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

62.    Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 5,891,459 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

63.    In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringement include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 5,891,459, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

64.     Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 5,891,459.

65.     End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 5,891,459.

66.     End-users of Defendants' accused products have taken, used, and orally administered the accused products.

67.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 5,891,459.

68.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 5,891,459, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

69.     Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 5,891,459, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

70.     Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 5,891,459, and have in fact urged them to do so.

71.     The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the

products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

72.     The inclusion of these specific infringing compounds in the products is material to practicing such methods.

73.     Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

74.     Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 5,891,459, by having them orally ingest the compounds disclosed in such claims.

75.     Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 5,891,459.

76.     Defendants also have direct, firsthand knowledge of United States Patent No. 5,891,459.

77.     Defendants' activities have been without express or implied license by Plaintiff.

78.     As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

79.     As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

80.     Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

# VI.    THIRD CAUSE OF ACTION

## Infringement of U.S. Patent No. 7,452,916

81.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

82.    Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 7,452,916 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

83.    In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringement include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 7,452,916, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

84.    Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 7,452,916.

85.    End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 7,452,916.

86.    End-users of Defendants' accused products have taken, used, and orally administered the accused products.

87.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain

ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 7,452,916.

88.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 7,452,916, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

89.    Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 7,452,916, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

90.    Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 7,452,916, and have in fact urged them to do so.

91.    The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

92.    The inclusion of these specific infringing compounds in the products is material to practicing such methods.

93.    Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

/ / /

94.     Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 7,452,916, by having them orally ingest the compounds disclosed in such claims.

95.     Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 7,452,916.

96.     Defendants also have direct, firsthand knowledge of United States Patent No. 7,452,916.

97.     Defendants' activities have been without express or implied license by Plaintiff.

98.     As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

99.     As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

100.    Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VII.   FOURTH CAUSE OF ACTION

### Infringement of U.S. Patent No. 6,117,872

101.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

102.    Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 6,117,872 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

/ / /

103.   In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringement include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 6,117,872, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

104.   Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 6,117,872.

105.   End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 6,117,872.

106.   End-users of Defendants' accused products have taken, used, and orally administered the accused products.

107.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 6,117,872.

108.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 6,117,872, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

109.   Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 6,117,872, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

110.   Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 6,117,872, and have in fact urged them to do so.

111.   The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

112.   The inclusion of these specific infringing compounds in the products is material to practicing such methods.

113.   Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

114.   Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 6,117,872, by having them orally ingest the compounds disclosed in such claims.

/ / /

115.   Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 6,117,872.

/ / /

- 17 -

116.   Defendants also have direct, firsthand knowledge of United States Patent No. 6,117,872.

117.   Defendants' activities have been without express or implied license by Plaintiff.

118.   As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

119.   As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

120.   Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VIII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for entry of judgment against Defendants as follows:

1.      A declaration that Defendants have infringed the patents in suit, under 35 U.S.C. §§ 271 *et seq.*;

3.      That injunctions, preliminary and permanent, be issued by this Court restraining Defendants, their respective officers, agents, servants, directors, and employees, and all persons in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of, the patents in suit;

4.      That Defendants be required to provide to Plaintiff an accounting of all gains, profits, and advantages derived by Defendants' infringement of the patents in suit, and that Plaintiff be awarded damages adequate to compensate Plaintiff for the wrongful infringing acts by Defendants, in accordance with 35 U.S.C. § 284;

/ / /

/ / /

5.      That the damages awarded to Plaintiff with regard to the patents in suit be increased up to three times, in view of Defendants' willful infringement, in accordance with 35 U.S.C. § 284;

6.      That this case be declared to be exceptional in favor of Plaintiff under 35 U.S.C. § 285, and that Plaintiff be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action;

7.      That Plaintiff be awarded its interest and costs of suit incurred in this action;

8.      Compensatory damages;

9.      Punitive damages; and

10.     That Plaintiff be awarded such other and further relief as this Court may deem just and proper.

Respectfully submitted,
NEWPORT TRIAL GROUP
A Professional Corporation

Dated:  January 30, 2015                  ___/s/Tyler J. Woods_____
                                          By:    Tyler J. Woods
                                                 Attorneys for Plaintiff

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury

3   trial for all issues in this case that properly are subject to a jury trial.

4
5                                             Respectfully submitted,

6                                             NEWPORT TRIAL GROUP
                                              A Professional Corporation
7

8   Dated:  January 30, 2015                   /s/Tyler J. Woods_____
                                              By:    Tyler J. Woods
9                                                    Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**                    13-CV-651 JLS (MDD)

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on January 30, 2015, I electronically filed the foregoing

3  **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** with the Clerk

4  of the Court using the CM/ECF system which will send notification of such filing via

5  electronic mail to all counsel of record.

6

7                                     */s/Tyler J Woods*

8                                        Tyler J. Woods

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE                                13-CV-651 JLS (MDD)