UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>MYOGENIX CORP. et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 13cv651 JLS (MDD)<br>(LEAD CASE)<br><br>**ORDER (1) STRIKING PLAINTIFFS' LATE-FILED DECLARATION AND (2) GRANTING DEFENDANTS' MOTION FOR ATTORNEY FEES**<br><br>(ECF Nos. 246, 253) |
| AND ALL RELATED CASES. | |

　　　　Presently before the Court is Defendant Vital Pharmaceuticals, Inc.'s Motion for Attorneys' Fees ("Vital Mot."), (ECF No. 246, *see also* ECF No. 257), Defendant Hi-Tech Pharmaceuticals, Inc.'s Motion for Attorneys' Fees ("Hi-Tech Mot."), (ECF No. 253), Plaintiffs The Board of Trustees of the Leland Stanford Junior University's and Thermolife International, LLC's Opposition to the Motion for Attorneys' Fees of Defendants Vital Pharmaceuticals, Inc. and Hi-Tech Pharmaceuticals, Inc. ("Pls.' Opp'n"), (ECF No. 267), Defendant Vital Pharmaceuticals, Inc.'s Reply in Response to Plaintiffs' Opposition to Motion for Attorneys' Fees ("Vital Reply"), (ECF No. 270), and Defendant Hi-Tech Pharmaceuticals, Inc.'s Reply in Support of Its Motion for Attorneys' Fees ("Hi-Tech Reply"), (ECF No. 271).

1

This matter came before the Court for oral argument on February 9, 2017. (ECF No. 278.) At that time, the Court permitted Plaintiffs to file a second, late-filed Declaration in Support of Plaintiffs' Opposition, and also permitted Defendants the opportunity to file a Response. (*See id.*) Both parties have now so filed, and therefore also presently before the Court are Plaintiffs' late-filed Declaration in Support of Plaintiffs' Opposition to the Motions for Attorneys' Fees ("Suppl. Decl."), (ECF No. 280), and Defendants' Joint Response to the Late Declaration ("Decl. Resp."), (ECF No. 279).

After considering the Parties' arguments and the law, the Court **STRIKES** the late-filed Declaration and **GRANTS** Defendants' Motions for Attorney Fees.

## BACKGROUND

Beginning in March 2013, Plaintiffs filed eighty-one related patent infringement lawsuits in this Court, including the instant case regarding Defendants Vital and Hi-Tech. (Vital Mot. 2:1–2.) The Court bifurcated the proceedings for purposes of invalidity, enforceability, and infringement and, with the consent of the parties, consolidated these actions up to and including trial on the invalidity of the patents in suit. (Mem. Decision and Order 2:14–16, ECF No. 245.) Vital, Hi-Tech, and GNC[1] proceeded to the invalidity trial phase, and after a five-day trial in August, the Court concluded that (1) claim 1 of the '459 Patent was invalid as anticipated; (2) claims 1, 4, 5, 7, 8, and 10 of the '872 Patent were invalid as obvious; (3) claims 1, 2, 3, 4, 5, 8, and 14 of the '006 Patent were invalid as obvious; and (4) claims 1, 2, and 6 of the '916 Patent were invalid as obvious. (*Id.* at 46:10–13.) In short, on September 29, 2016, the Court found that all patents-in-suit were invalid, thereby concluding the litigation.

Subsequently, Defendants Vital Pharmaceuticals, Inc. ("Vital") and Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech") separately moved for attorney fees against Plaintiffs The Board of Trustees of the Leland Stanford Junior University and ThermoLife International, LLC (collectively "Plaintiffs"). Both Vital and Hi-Tech base their claims on 35 U.S.C.

---

[1] GNC did not move for attorney fees even though it prevailed at trial.

§ 285, which enables the Court to award attorney fees in "exceptional cases." (*See generally* Vital Mot.; Hi-Tech Mot.) Although both Vital and Hi-Tech argue that this case should be classified as "exceptional,"—and therefore each defendant should be awarded attorney fees—for generally the same reasons,[2] each defendant presents additional arguments based on its own, specific products.

Initially, the Court vacated the hearing and took the Fee Motions under submission without oral argument pursuant to Civil Local Rule 7.1(d). (ECF No. 274.) However, three days later, Hi-Tech filed a Motion for Oral Argument; Vital consented to the Motion and Plaintiffs opposed. (*See* ECF No. 275.) The Court granted Hi-Tech's Motion and held oral argument on the pending Fee Motions on February 9, 2017 at 2:30 p.m. (*See* ECF No. 276.) At the end of oral argument, Plaintiffs argued that Defendants presented—both in their Reply briefing and at oral argument—new lines of argument regarding their Motions for Attorney fees such that Plaintiffs should have a chance to submit a formal declaration in Response. (*See* ECF No. 278.) Defendants strongly objected; however, the Court tentatively permitted (1) Plaintiffs to file a supplemental declaration, and (2) Defendants to file a response both explaining more fully their position as to why the late-filed declaration should not be considered and responding to the substance of the declaration.

Given these circumstances, the Court first addresses the late-filed Supplemental Declaration, and then moves to the substance of Defendants' Motions for Attorney Fees.

## THE LATE-FILED SUPPLEMENTAL DECLARATION

At the February 9, 2017, oral argument—after the Court had made its tentative ruling and after Plaintiffs, Defendant Vital, and Defendant Hi-Tech had each orally argued the points they thought relevant to the dispute—Plaintiffs requested permission to file a supplemental declaration setting forth additional information about Plaintiffs' Counsel's

---

[2] Hi-Tech states in Section I of its Motion that "[t]he arguments and authorities contained in [Vital's] Memorandum of Points and Authorities in Support of its Motion for Attorney Fees . . . are equally applicable to Hi-Tech." (Hi-Tech Mot. 1:14–16.) Further, Hi-Tech "adopts all statements of fact and evidence cited in Vital's Brief, except those pertaining to Vital's accused products." (*Id.* at 1:19–20.)

1  pre-filing investigation. In particular, Defendant Hi-Tech during its forty-five-page
2  presentation at oral argument several times specifically pointed to Plaintiffs' Counsel's
3  inadequate pre-filing investigation, and thus Plaintiffs sought leave to file a supplemental
4  declaration addressing that discrete issue. Defendants objected to the request, arguing that
5  any supplemental declaration would be untimely and unduly prejudicial. To allow all
6  parties to be fully heard on the request, the Court tentatively permitted Plaintiffs to file the
7  Supplemental Declaration, but also allowed Defendants to file a Response in part more
8  fully setting forth their arguments as to why the Court should not consider the
9  Supplemental Declaration. Defendants' arguments in the subsequently filed Declaration
10 Response now convince the Court that Plaintiffs' Supplemental Declaration should be
11 stricken.

12      As an initial matter, Plaintiffs at the time of their Opposition filing were
13 unquestionably on notice that the adequacy of their pre-filing investigation was a central
14 issue. (*E.g.*, Vital Mot. 1 (entire factual section entitled "ThermoLife's Lack of Pre-Filing
15 Investigation and Its Deficient Allegations"), 10 (entire analytical section entitled, in part,
16 "ThermoLife's Failure to Conduct a Diligent Pre-Filing Investigation").) And the adequacy
17 of any pre-filing investigation necessarily implicates a plaintiff's counsel; an attorney may
18 not blindly accept her client's statements or contentions but instead must conduct an
19 independent investigation of the same. *See generally, e.g.*, Federal Rule of Civil Procedure
20 11(b); (*see also, e.g.*, Vital Mot. 12 (explicitly citing and discussing a case where "[t]he
21 Federal Circuit found that the inquiry into [the defendant's] infringement performed by
22 [the plaintiff's] counsel was not reasonable under Rule 11" (emphasis added))). Therefore,
23 Plaintiffs should have responded in their Opposition to any deficiencies in Plaintiffs'
24 Counsel's pre-filing investigation, especially given that Plaintiffs did, in fact, respond to
25 the pre-filing–investigation argument generally. (Pls.' Opp'n 3 (entire section entitled, in
26 part, "Plaintiffs' Pre-Filing Infringement Investigation Was More Than Adequate"));
27 *Ultra-Temp Corp. v. Advanced Vacuum Sys., Inc.*, 194 F.R.D. 378, 383 (D. Mass. 2000)
28 ("A litigant is under an obligation to present all relevant, material, non-cumulative

evidence on point when opposing a motion."). But Plaintiffs did not produce in their Opposition any evidence of their Counsel's pre-filing investigation. Nor did Plaintiffs after Defendants filed their Replies move the Court to file a Sur-Reply or a Supplemental Declaration. Then, when Defendant Hi-Tech requested oral argument on the Fee Motions Plaintiffs objected to the request. (Mot. for Oral Arg. On Hi-Tech Pharmaceuticals, Inc.'s Mot. for Att'y's Fees and Expenses 2, ECF No. 275.) It was only at oral argument, <u>after</u> all parties had already been given an opportunity to present any arguments they wished, that Plaintiffs requested permission to file the Supplemental Declaration here at issue. And to now consider the extensive Declaration when Plaintiffs "failed to present this evidence to the district court in opposition to the motion for summary judgment, either in [their] written briefs and affidavits or at the . . . hearing," *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 999 (9th Cir. 2002), is simultaneously inappropriate and "unfair" both "to the movant" and "[o]ther litigants [who] could have that judicial time," *Carmen v. S.F. Unified School Dist.*, 237 F.3d 1026, 1030–31 (9th Cir. 2001). *See* S.D. Cal. L.R. 7.1(f)(3)(b) (explaining that a party's "opposition must contain a brief and <u>complete</u> statement of <u>all reasons in opposition</u> to the position taken by the movant" (emphases added)).

Further, Plaintiffs' Supplemental Declaration includes far more information (and even argument) than simply facts regarding Plaintiffs' Counsel's pre-filing investigation. For instance, the Supplemental Declaration has a Section devoted to addressing "Counsel's Involvement in ThermoLife's Licensing the Patents" at issue in this case. (Suppl. Decl. ¶¶ 7–8.) This information perhaps addresses Defendants' characterization of Plaintiff ThermoLife as a "patent troll"—another aspect of Defendants' Fee Motions—but does not speak <u>at all</u> to Counsel's <u>pre-filing</u> investigation. The Supplemental Declaration also exceeds the Court-permitted scope by addressing <u>post</u>-filing conduct. (*Id.* ¶¶ 14 (explaining infringement "analyses were revised, added to, and modified over time, including after the claim construction hearing in this matter"), 15 (discussing process of offering sublicenses after "product analyses were complete," including to parties who "were contacted only

after litigations were filed but before they were served with the Complaint").) And the Supplemental Declaration also exceeds the Court-permitted scope by arguing—for the first time—that in pre-filing Counsel "and ThermoLife" focused on the supposedly "key aspect[]" of "whether the advertising and labels disclosed the requisite intent of 'improving vascular NO activity of the vascular system of a human host by enhancing endothelial NO[,]' " and that therefore "[p]roduct testing would not have been of assistance in finding such intent." (*Id.* ¶ 16 (emphases added).)

Defendants correctly respond that these additional statements and arguments will be unfairly prejudicial because they are "incompetent and incomplete." (Decl. Resp. 9.) Specifically, Defendants have had no discovery regarding these recently added statements and arguments, some of which appear to directly conflict with the evidence previously before the Court. (*Compare* Suppl. Decl. ¶ 11, *with* Kramer Dep. 133:4–134:24, ECF No. 246.) And the Supplemental Declaration seems to selectively waive attorney-client privilege, (*e.g.*, Suppl. Decl. ¶¶ 7, 11–14), thus likely making Counsel's general investigation "including any statements made by witnesses to that attorney . . . discoverable." *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 325 (N.D. Ill. 2008).

Given the foregoing, the Court agrees with Defendants that Plaintiffs' Supplemental Declaration is inexcusably untimely, addresses issues and advances arguments well beyond the scope of Counsel's pre-filing investigation, and unduly prejudices Defendants for many unjustifiable reasons. The Court therefore **STRIKES** Plaintiffs' Supplemental Declaration.

## THE MOTIONS FOR ATTORNEY FEES

### I. Legal Standard

Under 35 U.S.C. § 285, the court "in exceptional cases may award reasonable attorneys' fees to the prevailing party" in a patent infringement lawsuit. The Supreme Court recently construed this language in *Octane Fitness, LLC v. ICO Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). Specifically, the *Octane* Court rejected the Federal Circuit's prior interpretation of the "exceptional case" language, that a case was "exceptional" only "when

there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation." *Id.* at 1754 (citing *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)). According to the Federal Circuit's pre-*Octane*, *Brooks Furniture* articulation, fees could "be imposed against the patentee only if both (1) the litigation [wa]s brought in subjective bad faith, and (2) the litigation [wa]s objectively baseless." *Id.* (emphasis added). However, the *Octane* Court rejected this "rigid and mechanical formulation" because the *Brooks Furniture* method "impermissibly encumber[ed] the statutory grant of discretion to district courts." *Id.* at 1754, 1755. *Octane* established a more flexible approach: "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1757.

Under the new analysis, a case may warrant a fee award if the litigation is brought in subjective bad faith, or if the litigation is objectively baseless—both are no longer required. *Id.* In particular, a case is "exceptional" when it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. District courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* To guide its discretion, a court may consider a non-exclusive list of factors, including: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

Additionally, *Octane* rejected the former requirement that patent litigants establish their entitlements to attorney fees by "clear and convincing evidence" in favor of a lower, preponderance of the evidence standard. *Id.* at 1758.

1    Finally, *Octane* does not mandate attorney-fee awards in all exceptional cases; i.e., even if a court determines that a case is "exceptional," the court still has discretion to deny attorneys' fees. *See Ion Health & Fitness, Inc. v. Octane Fitness, LLC*, Nos. 2011–1521, 2011–1636, 2014 WL 4194609, at *3 (Fed. Cir. 2014) ("The Supreme Court's decision in *Octane* did not, however, revoke the discretion of a district court to deny fee awards even in exceptional cases."); *see also S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986) ("Even an exceptional case does not require in all circumstances the award of attorney fees.").

## II.    Analysis

Defendants both generally argue that this case is "exceptional" due to the fact that Plaintiffs (1) lacked a reasonable basis to allege infringement; and (2) pursued a file-and-settle strategy typical of "patent trolls" while simultaneously engaging in "questionable litigation conduct." (Vital Mot. 10–18; *see also* Hi-Tech Mot. 2–12.) Plaintiffs respond that their pre-filing investigation "was more than adequate" and that Defendants' Motions effectively ask the Court to impermissibly make a post-trial non-infringement determination. The Court discusses each of Defendants' arguments in turn, addressing Plaintiffs' counterarguments where relevant.

### *A. Whether Plaintiffs Lacked a Reasonable Basis to Allege Infringement*

Vital's most extensive argument in support of this case qualifying as "exceptional" is that Plaintiffs failed to sufficiently investigate before filing their claims against Defendants, and therefore Plaintiffs lacked a reasonable basis to assert infringement against Vital. However, this argument requires the Court to (at least cursorily) engage in infringement analysis, something Defendants argue is a "premature and purely speculative approach [that] should be rejected outright . . . ." (Pls.' Opp'n 4–5.) Accordingly, the Court first addresses this threshold issue.

Plaintiffs cite two cases in support their argument, (1) *Computer Software Protection, LLC v. Adobe Systems Inc.*, No. CV 12-451-SLR, 2015 WL 1517402 (D. Del. Mar. 31, 2015), and (2) *EON Corp. IP Holdings, LLC v. FLO TV Inc.*, No. CV 10-812-

RGA, 2014 WL 2196418 (D. Del. May 27, 2014). However, the Court does not find these cases persuasive. As an initial matter, the *Computer Software* Court <u>did</u>, at least in part, consider issues particular to the litigation that were never-before resolved by the Court, ultimately holding that "to characterize these circumstances as exceptional is exceptionally presumptuous . . . ." 2015 WL 1517402, at *2. Further, the *Computer Software* Court in part noted that "frankly, the court is not inclined to address the merits of these defenses as though the cases had not been dismissed, a monumental waste of judicial resources in the context of a discretionary paradigm." *Id.* at *2 n.5. But here, on the facts of this particular case, the Court cannot agree that it would be a waste of time to analyze an issue that might prove useful to the Court's exercise of discretion. And Plaintiffs citation to *Eon Corp.* fares no better. Although in *Eon Corp.* the Court determined that because of the case's prior bifurcation the "[a]rguments by both sides regarding the size of the potential recovery are speculative and cannot form the basis for an award of attorney's fees," the question presented in the instant case is instead a purely non-speculative legal one—whether Plaintiffs conducted any reasonable pre-filing inquiry <u>whatsoever</u> regarding infringement. Accordingly, the Court does not find *Computer Software* or *Eon Corp.* sufficiently persuasive to constrain the Court's discretion in the present case. *See Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014) (awarding fees despite the plaintiff's arguments that "the abbreviated nature of this litigation provides an inadequate record to find that the case is exceptional[;]" specifically, that a "lack of a claim construction opinion by the Court" signaled "there [wa]s not sufficient evidence to find . . . [the relevant] infringement claim . . . unreasonable"), *aff'd*, 811 F.3d 479 (Fed. Cir. 2016); *Gust, Inc. v. AlphaCap Ventures, LLC*, No. 15cv6192 (DLC), 2016 WL 7165983, at *9 (S.D.N.Y. Dec. 8, 2016). ("That [the plaintiff] was able to thwart [the defendants'] efforts to obtain a formal declaration of invalidity does not prove the potential validity of the Patents, nor does it disprove the exceptionality of this case under § 285."). The Court thus turns to Defendants' arguments regarding Plaintiffs' inadequate pre-filing investigation.

/ / /

Defendants argue that (1) Plaintiffs accused certain Defendants' products of infringing despite the fact that those products' labels explicitly reveal an absence of the ingredient required for the products to infringe;[3] (2) with respect to the Defendants' products that did contain the infringing ingredient, Plaintiffs should have conducted a "simple test" to reveal that the products have "far less than the [required] amount" for infringement; and (3) with respect to the Defendants' products accused of infringing the '459 patent, Plaintiffs should have discovered by viewing the products' labels that those products contained an additional ingredient rendering the product incapable of infringement.[4] (Vital Mot. 10–14; *see* Hi-Tech Mot. 3–8.) Plaintiffs respond that "testing is not required" and that they "compared the asserted claims with the accused products . . . ." (Pls.' Opp'n 3–18 (emphasis removed).)

Defendants are correct that Federal Circuit "case law makes clear that the key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004). And while Plaintiffs in turn are correct that *Q-Pharma* indicates testing is not necessarily required, *see id.*, the *Q-Pharma* Court so held in part because in that case "Q-Pharma acquired a sample of the [allegedly infringing product] and reviewed its advertising and labeling[,]" *id. See also id.* ("In *Judin*, we concluded that the district court abused its discretion in not awarding sanctions because the patentee had not attempted to obtain a sample of the accused product and had not compared the accused device with the patent claims prior to filing suit. . . . Here, in contrast, Q-Pharma did obtain a sample of the Curél® CoQ$_{10}$ lotion and compared that product with the asserted claims of the '373

---

[3] Under this theory, both Defendants suggest that Plaintiffs would have known these certain products were non-infringing if Plaintiffs had simply read the products' labels. (Vital Mot. 12; Hi-Tech Mot. 3–7.)

[4] Specifically, Vital argues that although Claim 1 of the '459 patent requires administration of L-arginine or L-arginine hydrochloride "in the absence of other amino acids and polypeptides as other than dietary supplements," two of its accused products' (NO Shotgun and NO Synthesize) labels clearly list a number of amino acids as ingredients. Accordingly, Vital argues that had Plaintiffs simply viewed the ingredient list they would have discovered that these products cannot infringe. (Vital Mot. 13; *see also* Hi-Tech Mot. 6–8.)

patent."). However, Plaintiffs in the present case nowhere indicate that they relied on anything other than advertisements before bringing suit. (*See generally* Pls.' Opp'n.) And to the extent they stand behind Thermolife Executive Ron Kramer's earlier statement that to determine whether a product infringed they would look at advertisements and whether "the [product] label had certain doses of arginine in the product," (Kramer Dep. 133:15–16, ECF No. 246-6), Defendants correctly point out that either the statement is incorrect, or, "[a]lternatively, Kramer's testimony was accurate; ThermoLife determined that various . . . products did not meet the 1-gram threshold by reviewing the labels, and it filed suit anyway[,]" (Hi-Tech Mot. 4). Further, all the relevant products were publicly available, (*see id.* at 2), and it would have been extremely easy for Plaintiffs to examine their labels. Accordingly, if Defendants are correct that the relevant product labels disclose necessarily non-infringing amounts of ingredients, then this weighs strongly in favor of this case being exceptional.

However, Plaintiffs argue that it is a "false assertion that claim 1 of patent '459 specifically requires a dose of 1 gram of arginine." (Pls.' Opp'n 7.) Specifically, Plaintiffs contend that Plaintiffs' expert's statement at trial regarding arginine dosage was "never about what was required for infringement" but instead "was discussing what was learned after the issuance of the patent." (*Id.* (emphases removed).) And to analyze Defendants' infringement contentions would require "extensive discovery . . . to be taken, as the non-infringement positions Defendants assert, without any expert testimony, are wholly unsupported." (*Id.* at 9.) The Court is unconvinced by Plaintiffs' arguments.

Plaintiffs' own expert, both prior to and at trial, noted that less than gram of arginine would not enhance NO production as required by the '459 patent (Vital Mot. Ex. I ("Trial Tr."), 459:14–461:5, ECF No. 246-11; Vital Mot. Ex. H ("Boger Dep."), 252:3–253:25, ECF No. 246-10 ("Q: You said . . . 1 gram was ineffective; is that correct? A: 1 gram and below was ineffective; Q: According to studies?; A: Yes.")). That the claim language does not explicitly embrace the one-gram metric does not obviate that the claim explicitly requires administration of L-arginine in an amount sufficient to enhance nitric oxide

11

production, and that—at least as early as 1993—studies showed that one gram was insufficient to enhance such production. (*See* Trial Tr. 460:11–461:7.) Accordingly, Plaintiffs should have been aware of this limitation. *See Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1093 (Fed. Cir. 1997) (noting in Rule-11 context that reasonableness may be judged "in light of the available information at the time of filing").

Plaintiffs continue onward to discuss several of Defendants' allegedly infringing products, but nowhere indicate any further information regarding any prefiling investigation. This weighs against Plaintiffs. *See Calloway v. Marvel Entm't Grp.*, 854 F.2d 1452, 1471 (2d Cir. 1988) (noting that the plaintiffs' failure to describe a pre-filing inquiry "alone strongly suggests that no inquiry was made"), *rev'd in part on other grounds sub nom. Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989); *Enpat, Inc. v. Microsoft Corp.*, 26 F. Supp. 2d 811, 813 (E.D. Va. 1998) (noting that where "plaintiffs have presented no evidence that Enpat, its counsel, or its expert performed any prefiling investigation of these products" it weighed in favor of an exceptional case determination). However, Plaintiffs do at least partially neutralize Defendants' contentions, noting that many of Hi-Tech's product labels contain "bombastic" statements claiming, e.g., "significantly more nitric oxide production than any other nitric oxide supplement[,]" supplement combinations that "leave[] an abundance of L-arginine uncompromised in the muscle pool to create a wealth of NO," and supplementation approaches that "blast[] high dosages of L-arginine into the bloodstream . . . ." (Pls.' Opp'n 10–12.) However this advertising information in no way refutes the basic fact that many of the product labels disclose far less than the amount of l-arginine required to infringe; that Plaintiffs may have just recently discovered arguably misleading advertising does not sanction their prior complete failure to examine the actual ingredients contained in Defendants' products. At best, the advertising's juxtaposition to the ingredient amounts listed on the labels should have made the Plaintiffs <u>even more inquisitive</u> regarding the actual substance of the products against which they intended to assert infringement. (*See also* Pls.' Opp'n 12–13 (noting that "Hi-Tech and Mr. Wheat, on whose declaration Hi-Tech relies, have a history

of being the subjects of activities by federal regulators pertaining to statements made in Hi-Tech's supplement fact panels" and cataloging FDA actions).)[5]

Plaintiffs' remaining arguments hinge on the fact that some of Vital's products contain "much more L-Arginine . . . than V[ital] makes it seem[,]" be it due to inferential reasoning from ingredient-list ordering or because certain compounds dissociate into L-arginine "when the powder product is mixed with liquid as instructed on the label . . . ." (*Id.* at 15–16.) Notably, however, Plaintiffs nowhere argue that Vital's products actually contain amounts of L-arginine <u>sufficient to make them infringing</u>, instead arguing that "[t]here is more than enough on the labels and advertising for V[ital] to reflect the presence of at least 500 milligrams of L-arginine in its products[,]" and that Vital's marketing claims make "it reasonable to <u>assume</u> that [certain Vital] products contain more than a sufficient amount of arginine to enhance nitric oxide production . . . ." (*Id.* at 17.) And Vital quickly dispatches with the dissociation argument, noting that the quantity of the dissociation compound "is less than 5 miligrams—far less than what is required to meet the 'amount sufficient to enhance endogenous endothelial NO' claim limitation." (Vital Reply 6 (citing Kesten Decl. ¶ 2, ECF No. 270-2); *see also id.* at 7 (noting that dissociation amount for second product was also insufficient to infringe), 7–8 (refuting Plaintiffs arguments about a product "that was not even part of the case").)

Given the foregoing, Defendants have submitted strong evidence that had Plaintiffs conducted any reasonable pre-filing investigation, they would have been on notice that at least some of the products in this litigation could not have infringed. Plaintiffs have failed to compellingly rebut this showing. Accordingly, this weighs in favor of a finding of this case being "exceptional" for purposes of awarding attorney fees.

/ / /

---

[5] Plaintiffs also attempt to discredit Mr. Wheat, arguing that any statement in his declaration should have "the benefit of rigorous cross-examination" due to his past criminal record and other indiscretions. (Pls' Opp'n 13–14.) However, as just mentioned, prior indiscretions by Hi-Tech or its associates does not somehow obviate the necessity of Plaintiffs performing a reasonable pre-filing inquiry.

### *B. Whether Plaintiffs Pursued a File-and-Settle Strategy*

Defendants further argue that this case is "exceptional" because of Plaintiffs' aggressive litigation tactics; namely that Plaintiffs sued many defendants in order to extract nuisance-value settlements, typical behavior for a "patent troll." (Vital Mot. 14–16; Hi-Tech Mot. 8–11.) Defendants attach various settlement documents and licensing agreements in support of these allegations. (*See generally* ECF No. 257.) Plaintiffs respond by first objecting to Defendants' use of the term "patent troll,"—"whatever [Defendants] mean by it"—and "respectfully request[ing] the Court to not acknowledge Defendants' use of this term, as it is clearly intended to be derogatory and pejorative." (Pls.' Opp'n 18.) Turning to substance, Plaintiffs argue that Defendants do not address enough details about the settlements (e.g., "what ThermoLife's costs were" or what "the sales at issue were for each settling defendant"); argue that "the number of defendants in a consolidated case is irrelevant" to analysis; and note that "Plaintiffs have always been interested in testing the merits of their claims" as evidenced by "the fact that Plaintiffs took their validity case all the way to trial." (*Id.* at 18–20.) Ultimately, the Court agrees with Defendants.

As an initial matter, whether or not the Court labels Plaintiffs "patent trolls"—i.e., "in the patois of the patent community, . . . entities that hold patents for the primary purpose of enforcing them against alleged infringers, often exacting outsized licensing fees on threat of litigation[,]" *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016)—is irrelevant to the underlying conduct at issue in these Motions. Under any label, Plaintiffs in the present case (1) only list one marketed product, sales of which never amounted to more than 300 units, (*see* Kramer Dep. 29:18–34:20; 141:24–142:4; 145:12–146:11; 147:1–15); (2) brought suit under three patents that expired several months after ThermoLife agreed to purchase the licenses, (*compare* ECF No. 83-4 (exclusive equity agreement dated 02/05/2013), *with* ECF No. 253-10 at 36:20–24 (June 11, 1993 priority date); 150:17–151:1 (same); 217:15–19 (same)); (3) settled early with many of the defendants in this lawsuit for seemingly small dollar amounts, (*e.g.*, ECF Nos. 257-1–6); and (4) have filed numerous infringement suits, *e.g.*, Lex Machina, *2013 Patent Litigation*

14

*Year in Review*, 8 (2013) (listing, with 117 cases, "ThermoLife International" as third-highest "Plaintiff[] Filing Most New Cases"). Although Plaintiffs are correct that "[a] party seeking protection of constitutionally granted patent rights is not automatically the villain simply because it brings infringement allegations against multiple defendants," *Digitech Image Techs., LLC v. Newegg, Inc.*, No. 8:12-CV-01688-ODW, 2013 WL 5604283, at *5 (C.D. Cal. Oct. 11, 2013), that does not therefore mean that the Court must turn a blind eye to the pattern of action here. *See id.* (making above statement in case "without any evidence of malfeasance"). And the pattern of action here is indeed one that strongly suggests Plaintiffs brought suit against many defendants without carefully reviewing their claims as a calculated risk that might yield nuisance-value settlements. Accordingly, this evidence weighs in favor of finding this case to be exceptional.[6] *See, e.g.*, *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327–28 (Fed. Cir. 2011) ("The record supports the district court's finding that Eon–Net acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement from Flagstar. At the time that the district court made its exceptional case finding, Eon–Net and its related entities, Millennium and Glory, had filed over 100 lawsuits against a number of diverse defendants alleging infringement of one or more patents from the Patent Portfolio"); *Lumen View Tech.*, 63 F. Supp. 3d at 326–27 (concluding that "the number of similar lawsuits filed within a short time frame all indicate[d] that [the plaintiff's] instigation of baseless litigation [was] not isolated to this instance, but [was] instead part of a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation against even frivolous patent lawsuits").

///

---

[6] Although Defendants do not directly address Plaintiffs point that good faith is exhibited by the fact that the case proceeded all the way to trial, Hi-Tech argues that "it is evident that ThermoLife took a lesson from earlier patent trolls, taking one of its many cases through trial so that it could make this very argument." (Hi-Tech Reply 9.) While there is no evidence to support this statement, the Court does not conclude that this is fatal to Defendants' attorney-fee argument given the surrounding totality of the circumstances.

# CONCLUSION

Given the foregoing, the Court **CONCLUDES** that under the totality of the circumstances Defendants have shown that this case is exceptional such that an award of attorney fees is justified. In particular, Plaintiffs' pre-filing investigation was severely lacking, thus resulting in frivolous claims and the objective unreasonableness of certain infringement contentions; Plaintiffs' motivation was seemingly to extract nuisance-value settlements from a large number of defendants; and awarding fees here will advance compensation- and deterrence-oriented goals. The Court therefore **GRANTS** Defendants' Motions for Attorney Fees.

**IT IS SO ORDERED.**

Dated: April 4, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge