# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC, and THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY<br><br>                                Plaintiffs,<br><br>v.<br><br>MYOGENIX CORP. et al.,<br><br>                              Defendants.<br><br>AND ALL RELATED CASES. | Case No.: 13-CV-651 JLS (MDD) (LEAD CASE)<br><br>**ORDER: (1) GRANTING DEFENDANTS' MOTION TO STRIKE; AND (2) DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION**<br><br>(ECF Nos. 288, 289, 292) |

Presently before the Court are:

(1) Plaintiffs Thermolife International, LLC and The Board of Trustees of the Leland Stanford Junior University's Motion for Reconsideration, ("Reconsideration MTN," ECF Nos. 288, 289).[1]  Also before the Court are Defendants Vital Pharmaceuticals, Inc. and Hi-Tech Pharmaceuticals, Inc.'s Joint Opposition to the Motion, ("Reconsideration Opp'n," ECF No. 291), and Plaintiffs' Reply in support of the Motion, ("Reconsideration Reply," ECF No. 297);

---

[1] ECF No. 288 is the first Motion for Reconsideration, and ECF No. 289 is the Amended Motion.  The Court's references throughout this Order to the "Reconsideration MTN" are to ECF No. 289.

1   (2) Defendants Vital Pharmaceuticals, Inc. and Hi-Tech Pharmaceuticals, Inc's
2       Joint Motion to Strike Portions of the Declaration of Tyler J. Woods, ("Strike
3       MTN," ECF No. 292). Also before the Court is Plaintiffs' Opposition to the
4       Motion, ("Strike Opp'n," ECF No. 298), and Defendants' Reply in support of
5       the Motion ("Strike Reply," ECF No. 300).

6   As the Parties know, Defendants' Applications for Attorneys' Fees are also pending
7   before the Court, (ECF Nos. 284, 285, 299). Based on the intricacy and length of these
8   pending applications (along with the opposition, replies, and exhibits), the Court will rule
9   on them in a separate and subsequent order.

## BACKGROUND

Beginning in March 2013, Plaintiffs filed eighty-one related patent infringement
lawsuits in this Court, including the instant case regarding Defendants Vital
Pharmaceuticals, Inc. ("Vital") and Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"). The Court
bifurcated the proceedings for purposes of invalidity, enforceability, and infringement and,
with the consent of the Parties, consolidated these actions up to and including trial on the
invalidity of the patents in suit. Vital, Hi-Tech, and GNC proceeded to the invalidity trial
phase, and after a five-day trial in August 2016, the Court found that all patents-in-suit
were invalid, thereby concluding the litigation. Subsequently, Defendants Vital and Hi-
Tech separately moved for attorneys' fees against Plaintiffs The Board of Trustees of the
Leland Stanford Junior University and Thermolife International, LLC (collectively
"Plaintiffs"). (*See* ECF Nos. 246, 253.) Both Vital and Hi-Tech based their claims on 35
U.S.C. § 285, which enables the Court to award attorneys' fees in "exceptional cases."[2]

During oral argument on Defendants' motions for attorneys' fees, Plaintiffs
requested a chance to submit a formal declaration in response to new lines of argument
Plaintiffs alleged Defendants presented in the reply briefing and at oral argument. (Prior

---

[2] The preceding background information was taken from the Court's Prior Order. (*See* "Prior Order," ECF No. 282, at 2–3 (internal citations omitted).)

Order 3.)  During oral argument, Hi-Tech had pointed to Plaintiffs' Counsel's inadequate pre-filing investigation, and Plaintiffs requested leave to address this argument. (*Id.* at 4.) The Court tentatively allowed Plaintiffs to file a supplemental declaration and Defendants to file a response explaining why the declaration should not be considered.  (*Id.*)

In its Order, the Court struck Plaintiffs' late-filed declaration as the declaration was inexcusably untimely, addressed issues and advanced arguments well beyond the scope of Counsel's pre-filing investigation, and unduly prejudiced Defendants for many unjustifiable reasons.  (*Id.* at 6.)  As for the motions for attorneys' fees, the Court concluded "under the totality of the circumstances Defendants have shown that the case is exceptional such that an award of attorney fees is justified" and granted Defendants' motions.  (*Id.*)

Defendants subsequently filed applications for attorneys' fees pursuant to the Prior Order.  Plaintiffs filed a Motion for Reconsideration of the Prior Order.  Defendants then filed a Motion to Strike the Declaration of Tyler Woods, which Plaintiffs had filed with their Motion for Reconsideration.  The Court addresses the Motion to Strike first.

## **MOTION TO STRIKE**

Defendants move to strike substantially all of the Declaration of Tyler J. Woods, ("Woods Decl.," ECF No. 288-2) and the portions of Plaintiffs' Motion for Reconsideration that rely on the declaration.  (Strike MTN 2.)  Defendants move to strike the exhibits (and the description of those exhibits) in the declaration that are presented to the Court for the first time.  (*Id.*)  These portions, according to Defendants, are: ¶¶ 2–4 (Exhibits A–C); and ¶¶ 6–16 (Exhibits E–O).  Exhibits A–C are labels for Hi-Tech's products and Exhibits E–O are labels of other companies' products and website printouts. (Woods Decl. 2–5.)  Plaintiffs advance several arguments: (1) some of these exhibits are Defendants' own product labels, (2) Defendants do not dispute the labels' accuracy, (3) there is no prejudice or surprise, and (4) the exhibits complete the record and prove the Court's Prior Order was incorrect.  (Strike Opp'n 3.)

"A [motion for reconsideration] may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the

litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citing *Kona Enters. Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Plaintiffs do not argue these exhibits are not being presented to the Court for the first time nor that they could not have presented Exhibits A–C and E–O prior to the Court's ruling on Defendants' motions for attorneys' fees. Plaintiffs argue they present the exhibits "[t]o rectify any possible ambiguity" on the issue of the sale Thermolife's products, to "complete the record[,]" and "as proof that the Court's 'inferences' on ThermoLife's sales were simply incorrect." (Strike Opp'n 3.) But there is no evidence Plaintiffs could not have presented the exhibits "earlier in the litigation." *See Carroll*, 342 F.3d at 945. The Court finds it would be improper to consider the exhibits in connection with the present Motion. Accordingly, the Court **STRIKES** the portions of the Declaration of Tyler Woods, (ECF No. 288-2), and the exhibits that were not presented to the Court prior to the present Motion (¶¶ 2–4 (Exhibits A–C); and ¶¶ 6–16 (Exhibits E–O).)[3] The Court also **STRIKES** all portions of Plaintiffs' Motion for Reconsideration (ECF Nos. 288, 289) which rely on or reference these exhibits.

## MOTION FOR RECONSIDERATION

### I.    Legal Standard

In the Southern District of California, a party may apply for reconsideration "[w]henever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part." Civ. L. R. 7.1(i)(1).[4]

---

[3] Further, seemingly in passing in the Opposition, Plaintiffs request the Court take judicial notice of some of the exhibits. (*See* Strike Opp'n 2 ("the Court can even take judicial notice of Defendants' own labels"); *id.* at 3 n.2 ("Even if the Court were to strike Exhibit O, the Court may take judicial notice of the trademark's registration with the USPTO.")) The Court finds it inappropriate to take judicial notice of exhibits presented for the first time in a Motion for Reconsideration for the same reasons as stated above, as there is no evidence Plaintiffs could not have requested the Court take judicial notice of the exhibits previously.

[4] The Parties state they disagree as to whether Rule 59(e) applies to this case. Defendants argue the Court's Order is not a "judgment" but is an interlocutory order and thus Plaintiffs' Motion is governed by the standards for a motion for reconsideration, not Rule 59(e). (Reconsideration Opp'n 7.) Plaintiffs argue a motion for reconsideration is a motion to alter or amend judgment under Rule 59(e). (Reconsideration Reply 2 n.1 (citing *Kilbourne v. Coca-Cola Co.*, No. 14cv984-MMA (BGS), 2015 WL 10943610, at *2

4

Generally, reconsideration of a prior order is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters.*, 229 F.3d at 890 (citation omitted). Ultimately, "[w]hether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters.*, 229 F.3d at 883). "A [motion for reconsideration] may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll*, 342 F.3d at 945 (citing *Kona Enters.*, 229 F.3d at 890.

## II. Analysis

In their Motion, Plaintiffs do not argue there is any new evidence or an intervening change in the law warranting reconsideration, thus seeming to argue the Court's Order is clearly erroneous or manifestly unjust. However, in their Reply, Plaintiffs argue there has been a "monumental shift in Federal Circuit precedent on exceptionality" per *Checkpoint Systems, Inc. v. All-Tag Security S.A.*, 858 F.3d 1371 (Fed. Cir. 2017), *petition for cert. filed*, (U.S. Oct. 5, 2017) (No. 17-519). (Reply 2.) The *Checkpoint* opinion was issued June 5, 2017, after Plaintiffs' Motion for Reconsideration and Defendants' Opposition to the Motion had been filed. The Court first addresses this alleged change in the law.

### A. Checkpoint Systems *Does Not Warrant Reconsideration*

In *Checkpoint Systems*, Plaintiff Checkpoint brought suit against Defendant All-Tag for infringement of a patent for anti-theft tags used on merchandise. 858 F.3d at 1373. The jury found the patent invalid; following this, the district court found the case to be

---

(S.D. Cal. Sept. 11, 2015); and Civ. Local Rule 7.1(i)(1).) The Parties' disagreement and what each is requesting is unclear, as both Parties cite the same standard (under *School District No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). The Court applies this standard in reviewing Plaintiffs' Motion.

exceptional and awarded attorneys' fees. *Id.* The district court held that Checkpoint brought suit "for an improper purpose, that is, to 'interfere improperly' with All-Tag's business and 'to protect its own competitive advantage.'" *Id.* at 1374 (citation omitted). The court relied on Checkpoint's expert's failure to test the products, stating the expert based his infringement opinion on the examination of imported tags that were manufactured by All-Tag in Switzerland, although the accused tags were manufactured by All-Tag in Belgium. *Id.* at 1373. The Federal Circuit reversed, holding while motivation to harass or burden an opponent may be relevant in an exceptional case finding,[5] "motivation to implement the statutory patent right by bringing suit based on a reasonable belief in infringement is not an improper motive." *Id.* at 1375. The Federal Circuit found no evidence of harassment or abuse. In contrast, Checkpoint "had sufficient evidence of infringement to survive summary judgment and a *Daubert* challenge, and to proceed to a jury trial." *Id.* at 1376. The Federal Circuit also disagreed with the district court's findings regarding Checkpoint's expert witness, as "the evidence in the record explaining that the tags from Belgium were manufactured on the same machines that All-Tag transferred from Switzerland to Belgium. There was no contrary evidence." *Id.* at 1373–74. In sum, the Federal Circuit found no exceptionality. *Id.; see also id.* at 1376 (holding the "purpose behind § 285 is to prevent a party from suffering a 'gross injustice'" and that "[t]he exercise of discretion in favor of awarding attorney fees should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration . . . which makes it grossly unjust that the winner . . . be left to bear the burden of his own counsel fees.")

Plaintiffs argue *Checkpoint* demonstrates "the mere assertion of multiple infringement suits is no longer grounds for exceptionality." (Reply 3.) But this Court did

---

[5] The Federal Circuit quoted *SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed Cir. 2015) for the proposition: "[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination. " *Checkpoint¸* 858 F.3d at 1375 (alternation in original).

6

not hold otherwise.  In its Prior Order, this Court found:

> Although Plaintiffs are correct that "[a] party seeking protection of constitutionally granted patent rights is not automatically the villain simply because it brings infringement allegations against multiple defendants," *Digitech Image Techs., LLC v. Newegg, Inc.*, No. 8:12-CV-01688-ODW, 2013 WL 5604283, at *5 (C.D. Cal. Oct. 11, 2013), that does not therefore mean that the Court must turn a blind eye to the pattern of action here. *See id.* (making above statement in case "without any evidence of malfeasance").  And the pattern of action here is indeed one that strongly suggests Plaintiffs brought suit against many defendants without carefully reviewing their claims as a calculated risk that might yield nuisance-value settlements.  Accordingly, this evidence weighs in favor of finding this case to be exceptional.

(Prior Order 15.)  Clearly, this Court did not hold that "merely" because Plaintiffs filed numerous suits is grounds for exceptionality, and this Court did <u>not</u> find Plaintiffs brought suit "based on a reasonable belief in infringement[,]" as the Federal Circuit in *Checkpoint* found.  858 F.3d at 1375.  The Court finds its Prior Order still stands under *Checkpoint*, as its award of attorneys' fees, under the totality of the circumstances, <u>was</u> based on "a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration." *Id.* at 1376.  Because the Court does not determine *Checkpoint* to be an intervening change in the law warranting reconsideration, the Court **DENIES** Plaintiffs' Motion as to this ground.

### B.   The Court's Order Contains No Clear Error and Is Not Manifestly Unjust

"Clear error or manifest injustice occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Young v. Wolfe,* CV 07-03190 RSWL-AJWx, 2017 WL 2798497, at *5 (C.D. Cal. June 27, 2017) (quoting *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013)).

In finding exceptionality, the Court relied on several findings.  It first found "Plaintiffs have failed to completely rebut" Defendants' "strong evidence that had Plaintiffs conducted any reasonable pre-filing investigation, they would have been on notice that at least some of the products in this litigation could not have infringed" and Plaintiffs' "pre-filing investigation was severely lacking." (Prior Order 13, 16.)  The Court

found this factor weighs in favor of the case being exceptional. (*Id.*) The Court also found Plaintiffs' "pattern of action here is indeed one that strongly suggests Plaintiffs brought suit against many defendants without carefully reviewing their claims as a calculated risk that might yield nuisance-value settlements." (*Id.* at 15.) This evidence also weighed in favor of finding the case exceptional. (*Id.*) Finally, the Court found "awarding fees here will advance compensation- and deterrence-oriented goals." (*Id.* at 16.) Plaintiffs attack all three grounds in the Motion for Reconsideration.

### *(i) Plaintiffs' Pre-filing Investigation*

Plaintiffs present many arguments in support of their assertion that the Court did not review the totality of the circumstances in determining Plaintiffs' pre-filing investigation was "severely lacking." (Reconsideration MTN 10 (citing Prior Order 16).) The Court addresses each of Plaintiffs' arguments in turn.

### a. Whether the Court Disregarded Substantial Evidence

Plaintiffs argue the Court did not give weight to several pieces of evidence, including: (1) out of the 81 defendants that Plaintiffs sued, none of the others (besides the Defendants in the matter) complained of Plaintiffs' pre-filing investigations; (2) Defendants in this matter did not complain of the pre-filing investigation as to three patents in this suit (the '872, '006, and '916 patents); (3) Hi-Tech did not complain about the pre-filing investigation as to the '459 patent; and (4) Defendants never moved for summary judgment on non-infringement. (Reconsideration MTN 11–12.)[6]

As to grounds (1)-(3), without delving into the veracity of each claim, (*see*

---

[6] In this same vein, Plaintiffs also argue the Court's striking of the supplemental declaration was manifestly unjust. (Reconsideration MTN 12.) The Court struck the declaration, finding it was "inexcusably untimely, addresse[d] issues and advance[d] arguments well beyond the scope of Counsel's pre-filing investigation, and unduly prejudice[d] Defendants for many unjustifiable reasons." (Prior Order 6.) Plaintiffs argue that the Court's striking of the declaration "on the grounds of prejudice," but relying "on post-trial statements by Defendants that their products do not infringe" was manifestly unjust. (Reconsideration MTN 11–12.) Plaintiffs cite to no evidence to support this assertion and it is unclear to which "post-trial statements" by Defendants that Plaintiffs refer. Further, Plaintiffs do not address the other reasons why the Court struck the declaration beyond the prejudice. The Court finds no manifest injustice in striking the supplemental declaration.

Reconsideration Opp'n 14–15 (rebutting Plaintiffs' claims)), the evidence to which Plaintiffs cite was presented in their Prior Opposition. (*See* Reconsideration MTN 11 ("These issues were all addressed in Plaintiffs' opposition . . . .").) The Court did not disregard this evidence, and reviewed the Parties' arguments in full before coming to its decision. (*See* Prior Order 13 ("Defendants have submitted strong evidence that had Plaintiffs conducted any reasonable pre-filing investigation, they would have been on notice that at least some of the products in this litigation could not have infringed. Plaintiffs have failed to compellingly rebut this showing.").) Simply because this specific evidence does not appear in the Court's Prior Order does not mean the Court disregarded the evidence. *See W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1285 (9th Cir. 1984) ("A judge is not required, in making findings, to mention every item of evidence and either adopt or reject it."). The Court finds no clear error in its finding.

As to ground (4), Plaintiffs argue the Court "overlooked that the Defendants urged for bifurcation of this case, with validity (not infringement) litigated first. Defendants never moved for summary judgment on non-infringement." (Reconsideration MTN 12.) Plaintiffs argue on this basis alone, the Court "should be able to base its exceptionality finding on a lack of infringement." (*Id.* (citing *Stragent LLC v. Intel Corp.*, No. 6:11-CV-412, 2014 WL 6756304, at *5 (E.D. Tex. Aug. 5, 2014)).)[7] Defendants argue this matter never reached a discovery phase for infringement so a motion for summary judgment related to the infringement claims would have been inappropriate pursuant to Federal Rule of Civil Procedure 56(b). (Reconsideration Opp'n 14.) Defendants argue, unlike in *Stragent*, they never had the opportunity to move for summary judgment on non-infringement because this case was bifurcated with the issue of validity heard first. (*Id.*) The Court agrees with Defendants and finds no basis to reconsider its finding.

---

[7] In *Stragent,* both the issues of validity and infringement went to the jury. In determining whether the case was exceptional, the district court held because the defendant never sought summary judgment of non-infringement, "[t]his suggests that [defendant] did not always view [plaintiff's] infringement position as frivolous. There is little injustice in forcing [defendant] to bear its own attorney's fees for defending a claim it did not challenge on summary judgment." 2014 WL 6756304, at *5.

b. Whether the Court Erred in Finding Plaintiffs Relied Only on
Advertising for Their Pre-Filing Investigation

Plaintiffs argue "[t]he Court erroneously determined that in their pre-filing investigation Plaintiffs reviewed only 'advertising,' and not 'labels.' (Reconsideration MTN 13 (citing Prior Order 11–12.)) Plaintiffs are incorrect. The Court held:

> Plaintiffs in the present case nowhere indicate that they relied on anything other than advertisements before bringing suit. And to the extent they stand behind Thermolife Executive Ron Kramer's earlier statement that to determine whether a product infringed they would look at advertisements and whether "the [product] label had certain doses of arginine in the product," Defendants correctly point out that either the statement is incorrect, or, "[a]lternatively, Kramer's testimony was accurate; ThermoLife determined that various . . . products did not meet the 1-gram threshold by reviewing the labels, and it filed suit anyway."

(Prior Order 11 (internal citations omitted).) The Court nowhere held Plaintiffs did not review labels. In fact, the Court noted the "basic fact that many of the product labels disclose far less than the amount of l-arginine required to infringe" and "[a]t best, the advertising's juxtaposition to the ingredient amounts listed on the labels should have made the Plaintiffs <u>even more inquisitive</u> regarding the actual substance of the products against which they intended to assert infringement." (Prior Order 12.)[8] The Court finds no clear

---

[8] In this section of their Motion, Plaintiffs also argue the Court held Plaintiffs to the incorrect legal standard with respect to the exceptional case determination. (Reconsideration MTN 14 (citing Prior Order 13 (stating "Plaintiffs nowhere argue Vital's products actually contain amounts of L-arginine <u>sufficient to make them infringing</u>").) Plaintiffs argue a pre-filing investigation is sufficient if Plaintiffs "'evaluated the patent portfolio, analyzed the patent's validity, determined the scope of the patent's claims, and performed an infringement analysis.'" (Reconsideration MTN 14 (quoting *Intamin Ltd. v. Magnetar Tech., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007).) But Plaintiffs did not prove, nor did the Court find, that Plaintiffs performed a sufficient pre-filing investigation. (*See* Prior Order 13 ("[H]ad Plaintiffs conducted any reasonable pre-filing investigation, they would have been on notice that at least some of the products in this litigation could not have infringed.").) Plaintiffs also argue even if their "pre-filing analysis turned out to be incorrect, that would not be relevant to an exceptional case determination." (Reconsideration MTN 15.) But this Court did not find the pre-filing investigation was "incorrect," it found it to be

1  error in its finding.

2          c.  Whether the Court Erred in Determining Certain Product Labels

3              Disclosed an Additional Ingredient Rendering Them Incapable of

4              Infringement

5          Plaintiffs argue "[t]he Court also erred in finding that 'Plaintiffs should have

6  discovered by viewing the products' labels that those products contained an additional

7  ingredient rendering the product incapable of infringement.'" (Reconsideration MTN 16

8  (citing Prior Order 10).)  The Court did not make this finding—the Court was laying out

9  Defendants' arguments, and the above argument was one of them. (*See* Prior Order 10

10 ("Defendants argue that . . . . Plaintiffs should have discovered . . .").)  This is not a finding

11 by the Court and warrants no reconsideration.  In the Reply, Plaintiffs then argue the Court

12 adopted this argument by Defendant as it relates to Plaintiffs' pre-filing investigation

13 regarding Defendants' advertising. (Reconsideration Reply 7.)   The Court's findings

14 relating to Plaintiffs' investigation have been addressed. *See supra* Section II.B.i.b.

15          d.  Whether the Court Relied on a Statement Regarding the State of the

16             Art in 1993

17         The Court found Plaintiffs should have been aware that "the claim explicitly requires

18 administration of L-arginine in an amount sufficient to enhance nitric oxide production,

19 and that—at least as early as 1993—studies showed that one gram was insufficient to

20 enhance such production." (Prior Order 12 (citing "Trial Transcript," ECF No. 246-11, at

21 460:11–461:7 (Dr. Berger's testimony)).)  Plaintiffs argue the trial transcript does not

22 support this statement. (Reconsideration MTN 18.)  The Court disagrees.  In Dr. Berger's

23 testimony, he stated "Prior to [June of 1993], there was uncertainty whether L-arginine

24 would enhance nitric oxide production in the body at all because that is what the patent

25 _____

26 inadequate. This is relevant to an exceptional case determination for the reasons cited in the Prior Order.
   *See Enpat, Inc. v. Microsoft Corp.*, 26 F. Supp. 2d 811, 813 (E.D. Va. 1998) (noting that where "plaintiffs
27 have presented no evidence that Enpat, its counsel, or its expert performed any prefiling investigation of
   these products" it weighed in favor of an exceptional case determination).  The Court finds no error in this
28 finding.

disclosed." (Trial Transcript 459:17–19.) He then continued to testify on this same topic, to which the Court cited in the Prior Order. (*Id.* at 460:11–461:7 (Dr. Berger's testimony that administering 1 gram or less of arginine is not going to meaningfully affect the arginine level in one's plasma).) It is unclear why Plaintiffs now argue "there is no discussion of Dr. Berger of what was known in 1993." (Reconsideration MTN 18). The Court finds no error in its reliance on the trial transcript in finding exceptionality.

Plaintiffs then go on to argue that, in any event, the amount of arginine was not relevant to their pre-filing investigation because the '459 patent is a method patent. (*Id.*) There is no evidence Plaintiffs could not have raised this argument in its Prior Opposition, but it did not, and a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll*, 342 F.3d at 945.

### (ii) Plaintiffs' Pattern of Action

In assessing Plaintiffs' litigation tactics, the Court found Plaintiffs' "pattern of action here is indeed one that strongly suggests Plaintiffs brought suit against many defendants without carefully reviewing their claims as a calculated risk that might yield nuisance-value settlements." (Prior Order 15.) In support, the Court found Plaintiffs: (1) only list one marketed product, sales of which never amounted to more than 300 units; (2) brought suit under three patents that expired several months after Thermolife agreed to purchase the licenses; (3) settled early with many of the defendants in this lawsuit for seemingly small dollar amounts; and (4) have filed numerous infringement suits. (*Id.* at 14–15.) Plaintiffs now argue each of these findings is not supported by the record. (Reconsideration MTN 20.)

#### a. Re: The One Marketed Product and Sales of Less Than 300 Units

Plaintiffs argue "the record is incomplete in regards to how many 'marketed product' units ThermoLife sold and there is no support in the record regarding the 'amount[]' of sales." (Reconsideration MTN 21.) In making its finding, the Court reviewed and cited to Mr. Kramer's deposition, wherein Mr. Kramer discussed a product being developed that

13-CV-651 JLS (MDD)
(LEAD CASE)

he thought might infringe Plaintiffs' patents. ("Kramer Dep.," ECF No. 253-11, at 29:18–24.) He testified this product was called Pump-Bol and Thermolife had sold 288 units of the product. (*Id.* at 33:23–25.) Mr. Kramer testified Thermolife did not sell any other finished products that contain arginine nitrate. (*Id.* at 36:23–37:4). Therefore, it is clear there is support in the record for the Court's finding of the amount of sales of this product. In fact, in their Opposition to Defendants' Motion for Attorneys' Fees, Plaintiffs argued "ThermoLife is a seller of finished products" but cited only to Mr. Kramer's deposition in support of this argument, wherein Mr. Kramer testified Thermolife currently sells Pump-Bol. ("Prior Opp'n," ECF No. 267, at 23 (citing Kramer Dep., at 31:18–19.) The Court relied on this information, and the fact that Plaintiffs now argue the record is "incomplete" is not a basis for reconsideration, as Plaintiffs provide no information as to why they could not "complete" the record prior to the present Motion.[9]

Plaintiffs further argue the Court overlooked that Thermolife sells arginine nitrate as a raw ingredient. (Reconsideration MTN 21 (citing Kramer Dep., at 37:5–7).) The Court did not overlook this evidence and this evidence does not change the Court's finding that Plaintiffs "only list one marketed product, sales of which never amounted to more than 300 units." (Prior Order 14.) Plaintiffs' sales of arginine nitrate do not affect the Court's finding of exceptionality. The Court finds no clear error in its finding.[10]

b. Re: Plaintiffs Brought Suit Under Three Patents That Expired Several Months After Thermolife Agreed to Purchase the Licenses

Plaintiffs argue the Court's finding that Plaintiffs "brought suit under three patents that expired several months after ThermoLife agreed to purchase the licenses" does not

---

[9] Plaintiffs do consistently attempt to explain the lack of "completeness" of the record by arguing that discovery was never taken on various issues. (*See* Reconsideration MTN 21, 22.) Plaintiffs do not explain why they would need to complete discovery to be able to present the Court with information as to Thermalife's product sales, or why they could not present this information earlier than the present Motion.

[10] Plaintiffs also argue it was clear error and manifestly unjust for the "Court to accept Defendants' unsupported theory that both Plaintiffs are 'patent trolls.'" (Reconsideration MTN 23.) The Court did not identify Plaintiffs as patent trolls. (*See* Prior Order 14 ("As an initial matter, whether or not the Court labels Plaintiffs "patent trolls" . . . is irrelevant to the underlying conduct at issue in these Motions.")

support a finding of bad faith or exceptionality. (Reconsideration MTN 24 (citing Prior Order 14).) This issue was clearly raised in Hi-Tech's Motion for Attorneys' Fees. (*See* ECF No. 253-1, at 11 ("ThermoLife licensed the four patents-in-suit in February of 2013, despite the fact that three of them were to expire approximately four months later, in June 2013.") Plaintiffs had an opportunity in their Prior Opposition to argue this fact does not support exceptionality, but Plaintiffs did not do so. Plaintiffs cannot make the argument now in a motion for reconsideration. Further, Plaintiffs also argue the Court disregarded that Plaintiffs brought suit under <u>four</u> patents (one being the '872 patent, which expired in 2018). (Reconsideration MTN 24.) The Court did not find that Plaintiffs brought suit under "only" three patents; the Court recognized there were four patents at issue (*see* Prior Order 1), but three expired in 2013.

### c. Re: Plaintiffs Settled Early With Many of the Defendants in This Lawsuit for Seemingly Small Dollar Amounts

The Court held Plaintiffs "settled with many of the defendants in this lawsuit for seemingly small dollar amounts" (Prior Order 14 (citing ECF Nos. 257-1 to 6)); Plaintiffs now argue this statement has "no support in the record." (Reconsideration MTN 24.) First, the Court specifically cited to ECF Nos. 257-1 to 6 to support this finding,[11] thus showing the Court did find support in the record. Second, Plaintiffs already attempted to attack this assertion in their Prior Opposition, arguing that Defendants' claim that Plaintiffs' "strategy was to 'settl[e] with many defendants for far less than litigation costs' and 'extract the maximum amount of settlement money from the defendants[]'" is baseless. (Prior Opp'n 23.) Plaintiffs argued Defendants' "guesses" regarding Thermolife's recovery amounts are unsupported by evidence and are incorrect. (*Id.*) But Plaintiffs failed to present evidence to the contrary. Again, in the present Motion, Plaintiffs argue the record is "woefully incomplete as to what happened in any of those other settlements" but fail to point to any evidence that contradicts the exhibits set forth by Defendant. (Reconsideration MTN 26.)

---

[11] These exhibits were filed under seal, so the Court does not describe them here.

In any event, Plaintiffs cannot attempt to re-argue this point now; a motion for reconsideration does not give parties a "second bite at the apple." *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001).

### d. Re: Plaintiffs Have Filed Numerous Infringement Suits

The Court found Plaintiffs have filed numerous infringement suits, citing in support Lex Machina, *2013 Patent Litigation Year in Review*, which listed 117 cases filed by Thermolife. (Prior Order 14–15.) Plaintiffs first attack this finding by arguing the Lex Machina report is false and unreliable. (Reconsideration MTN 26 n.8.) Plaintiffs also argue the "numerous" other suits are irrelevant because those cases were not deemed exceptional. (*Id.* at 26.)

First, the Lex Machina report was presented in Vital's Motion for Attorneys' Fees (*See* ECF No. 246-7) and Plaintiffs nowhere addressed the report in their Prior Opposition. Plaintiffs cannot now present the argument for the first time. Second, to the extent other courts' or defendants' evaluations of the exceptionality of other cases filed by Plaintiffs are relevant in this matter, this evidence should have been presented in Plaintiffs' Prior Opposition and is improperly presented here.

### (iii) *The Advancement of Compensation- and Deterrence-Oriented Goals*

The Court found "awarding fees here will advance compensation- and deterrence-oriented goals." (Prior Order 16); *see Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 n.6 (district courts may consider factors in determining whether to award fees, including "the need in particular circumstances to advance considerations of compensation and deterrence"). Plaintiffs now argue Defendants cannot show they spent any legal fees they should not have even if Plaintiffs' pre-filing investigation was inadequate, and there is therefore no compensation-oriented goal that awarding fees would advance. (Reconsideration MTN 28.) The Court need not evaluate the amount of attorneys' fees incurred by Defendants when determining exceptionality. As Plaintiffs themselves note, they can address the reasonableness of Defendants' fees in their Opposition to Defendants' Applications for Attorneys' Fees. (*Id.*) Therefore, the Court

15

will not address the reasonableness of Defendants' requested fees here, but finds no error in its determination that awarding fees will advance compensation-oriented goals.

Plaintiffs also argue there are no deterrence-oriented goals that would be advanced by an award of fees because the need for deterrence applies where the plaintiff has engaged in "extortive litigation" or is a "patent troll." (*Id*.) Although this may be true, a court considering an attorneys' fees award under 35 U.S.C. § 285 should seek to further Congress's two-fold policy objective in enacting the statute: "(1) to provide a deterrent to frivolous or unnecessary patent litigation, and (2) to serve a compensatory purpose for the parties injured by such litigation." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1165 (N.D. Cal. 2015); *see also Magnetar Tech. Corp. v. Six Flags Theme Parks, Inc.*, No. 07-127-LPS-MPT, 2017 WL 962760, at *14 (D. Del. Mar. 13, 2017) ("The need to compensate and deter arises when the accused party's misconduct unfairly prejudices the opposition and improperly increases litigation expense.") The Court finds there is sufficient evidence in the record (and cited throughout the Prior Order) to prove that deterrence-oriented goals will be advanced by the Court's Order. The Court finds no error in this finding.

## III. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Reconsideration (ECF Nos. 288, 289).

**IT IS SO ORDERED.**

Dated: October 23, 2017

Hon. Janis L. Sammartino
United States District Judge

13-CV-651 JLS (MDD)
(LEAD CASE)