UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC, et al.,<br><br>                                  Plaintiffs,<br><br>v.<br><br>MYOGENIX CORP., et al.,<br><br>                                  Defendants.<br><br><br>AND ALL RELATED CASES. | Case No.:  13-CV-651 JLS (MDD) (LEAD CASE)<br><br>**ORDER GRANTING DEFENDANTS' APPLICATIONS FOR ATTORNEYS' FEES**<br><br>(ECF Nos. 284, 285, 299, 311) |

Presently before the Court are Defendant Hi-Tech Pharmaceuticals, Inc.'s ("Hi-Tech") and Defendant Vital Pharmaceuticals, Inc.'s ("Vital") applications for attorneys' fees, (ECF Nos. 284, 311 and Nos. 285, 299, respectively).[1]  Also before the Court are Plaintiffs' responses in opposition to the fee applications, (ECF Nos. 293 ("Opp'n to Fee Apps."), 303 ("Opp'n to Vital Supp."), 312 ("Opp'n to Hi-Tech Supp.")).  Defendants also filed replies in support of their fee applications, (ECF Nos. 295 ("Vital Reply"), 304 ("Vital Supp. Reply"), 307 ("Hi-Tech Reply")).  The Court awards fees as detailed below.

---

[1] Both Defendants filed two applications each: an original fee application and a supplemental fee application.

## BACKGROUND

Beginning in March 2013, Plaintiffs filed eighty-one related patent infringement lawsuits in this Court, including the instant case regarding Defendants Vital and Hi-Tech. The Court bifurcated the proceedings for purposes of invalidity, enforceability, and infringement and, with the consent of the Parties, consolidated these actions up to and including trial on the invalidity of the patents in suit. Vital, Hi-Tech, and GNC[2] proceeded to the invalidity trial phase, and after a five-day trial in August 2016, the Court found that all patents-in-suit were invalid, thereby concluding the litigation. Subsequently, Defendants Vital and Hi-Tech separately moved for attorneys' fees against Plaintiffs The Board of Trustees of the Leland Stanford Junior University and Thermolife International, LLC (collectively "Plaintiffs"). (*See* ECF Nos. 246, 253.) Both Vital and Hi-Tech based their claims on 35 U.S.C. § 285, which enables the Court to award attorneys' fees in "exceptional cases."

The Court concluded "under the totality of the circumstances Defendants have shown that the case is exceptional such that an award of attorney fees is justified" and granted Defendants' motions. (ECF No. 282, at 6.)[3] Plaintiffs filed a motion for reconsideration, which the Court denied. (*See* ECF No. 315.)

Hi-Tech filed an initial application wherein it requested an award of $991,744.52. ("Hi-Tech Fee App.," ECF No. 284.) Hi-Tech then filed a supplemental application, requesting an additional $22,493.75 for fees and costs incurred since the filing of its first application, (for a total of $1,014,238.27). ("Hi-Tech Supp. Fee App.," ECF No. 311). Vital also filed an initial Application for Fees wherein it requested an award of $382,641.99. ("Vital Fee App.," ECF No. 285). Vital then filed a Supplemental Application, requesting a total of $413,859.08, alleging the extra fees were incurred as a result of Plaintiffs' motion for reconsideration and Plaintiffs' opposition to Vital's Fee

---

[2] GNC did not move for attorneys' fees.
[3] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

Application. ("Vital Supp. Fee App.," ECF No. 299.)   Plaintiffs assert many arguments in response, all of which will be addressed below.

## LEGAL STANDARD

Pursuant to 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  Reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  *See Fischer v. SJB–P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  A reasonable fee is determined by multiplying (1) "the number of hours reasonably expended on the litigation" by (2) "a reasonable hourly rate." *Hensley*, 461 U.S. at 433.

 "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rate." *Id.* at 437.  To do so, the applicant "should submit evidence supporting the hours worked and rates claimed." *Id.* "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.*  The district court may also exclude any hours that are excessive, redundant, or otherwise unnecessary. *Id.* at 434.  However, the party seeking fees need not provide comprehensive documentation to prevail. *Id.* at 437.   District courts have "'considerable discretion' in determining the amount of reasonable attorney fees under § 285." *Homeland Housewares, LLC v. Sorensen Research*, 581 Fed. App'x. 877, 881 (Fed. Cir. 2014) (internal citations omitted).

## ANALYSIS

### I.    Reasonableness of Hourly Billing Rate

To determine the appropriate lodestar amount, the Court must first assess the reasonableness of counsel's claimed hourly billing rate. *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994).  "A court awarding attorney fees must look to the prevailing market rates in the relevant community." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th Cir. 2003) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  To determine the prevailing market rates, courts should consider "the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel

charge their paying clients for legal work of similar complexity." *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *vacated in part on other grounds on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993). While in most cases, the relevant legal community is "the forum in which the district court sits" *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205–06 (9th Cir. 2013), in patent cases, federal circuit law is applied to the issue of attorney fees. *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004). "Evidence the Court should consider includes '[a]ffidavits of the [movant's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the [movant's] attorney.'" *Ravet v. Stern*, No. 07-CV-31 JLS (CAB), 2010 WL 3076290, at \*2 (S.D. Cal. Aug. 6, 2010) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

## A. Hi-Tech

In its fee application, Hi-Tech seeks hourly rates of "the partner attorneys primarily responsible for handling the case" as follows: $380/hour for Mr. Gallagher; $425/hour for Mr. Leach; $500/hour for Ms. Posner; $655/hour for Mr. Blythe; and $845/hour for Mr. Hawkins. (Hi-Tech Fee App. 6.) But Hi-Tech's application does not itemize the hourly rate of every attorney who worked on this matter—various other attorneys for Hi-Tech filed declarations detailing the hourly rates of themselves and others, but Hi-Tech does not list all of the attorneys in its application. For clarity's sake, the Court has compiled the hourly rates of everyone listed in Hi-Tech's application and the attached declarations.

| Mr. Gallagher | $380 |
|---------------|------|
| Mr. Leach | $500 |
| Ms. Posner | $655 |
| Mr. Blythe | $655 |
| Mr. Hawkins | $845 |
| Dr. Smythe | $430 |
| Ms. Parker | $225 |
| Ms. Leach | $125 |
| Mr. Hillyer | $485 |

| Mr. Feldman | $575 |
| Mr. Frank | $375 |
| Ms. DeAngelis | $365 |
| Mr. Stahl | $275 |

(*See* ECF Nos. 284-1, 284-5–284-7.)

Hi-Tech provided the experience and practice areas of a few of its attorneys. Mr. Gallagher is a partner at Hoffman & Baron. ("Gallagher Decl.," ECF No. 284-3, ¶ 1.) Accordingly to his biography, Mr. Gallagher's practice focuses on patent infringement, antitrust, trade secret, and unfair competition disputes. (ECF No. 284-6, at 16.) Mr. Leach is the owner of The Law Officers of Arthur W. Leach and specializes in commercial litigation matters, particularly those relating to the dietary supplement industry. ("A. Leach Decl.," ECF No. 284-4, ¶ 1.) Mr. Leach has tried "dozens of complex civil and criminal cases." (*Id.* ¶ 8.)

Ms. Posner is an attorney with Posner Law Corporation. ("Posner Decl.," ECF No. 284-2, ¶ 1.) For the past 25 years of her career, Ms. Posner has practiced primarily in the field of complex business, class action and intellectual property litigation. (*Id.* ¶ 2.) Mr. Blythe, an attorney at King and Spalding, LLP, was retained by Hi-Tech when "trial was imminent." (Hi-Tech Fee App. 4.) Mr. Blythe specializes in intellectual property litigation, particularly patent infringement disputes. ("Hawkins Decl.," ECF No. 284-5, ¶ 1.) Mr. Hawkins is also an attorney at King and Spalding, LLP. He specializes in intellectual property litigation, particularly patent infringement disputes. (Hawkins Decl. ¶ 1.) Also at King & Spalding is Dr. Smythe, a patent agent who worked on this matter and who holds a Ph.D and M.S. in Chemistry and B.A. in Biology and Chemistry. (*Id.* ¶ 2.) Mr. Hillyer was a partner at Feldman Gale during relevant times. ("Hillyer Decl," ECF No. 284-1, ¶ 1.) Mr. Hillyer specializes in litigation of intellectual property disputes. (*Id.*) Hi-Tech did not provide any information as to any other attorneys.

In support of its attorneys' hourly rates, Hi-Tech provides that the rates of most of the attorneys are "substantially below the $795 per hour median billing rate for partners in

large national firms, as set forth in the American Intellectual Property Law Association ("AIPLA") *Economic Survey*." (Hi-Tech Fee App. 6.)  This is aside from Mr. Hawkins, whose rate is "still lower than the $868 third quartile figure set forth in the AIPLA *Economic Survey*." (*Id.*)  Hi-Tech also cites cases where California district courts have found similar rates reasonable when evaluating rates under 35 U.S.C. § 285.  (*Id.*)

Plaintiffs do not contest Hi-Tech's hourly rates.  "In the absence of opposing evidence, the proposed rates are presumed reasonable." *Velez v. Wynne*, 220 Fed. App'x 512, 515 (9th Cir. 2007) (quoting *Cortes v. Metro Life Ins. Co.*, 380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005)).   The Court thus presumes the rates are reasonable at the start.  A court may refer to AIPLA surveys in determining a reasonable rate.  *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988.)   And, "[w]hen . . . a fee target has failed to offer either countervailing evidence or persuasive argumentation in support of its position, we do not think it is the court's job either to do the target's homework or to take heroic measures aimed at salvaging the target from the predictable consequences of self-indulgent lassitude." *United States v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1105–06 (9th Cir. 2015) (internal citation and quotation marks omitted); *see Alzheimer's Inst. of Am. v. Eli Lilly & Co.*, No. 10-CV-482-EDL, 2016 WL 7732621, at *3 (N.D. Cal. Apr. 14, 2016) (finding the defendant's hourly rates reasonable because the plaintiff did not object and the rates were less than the average AIPLA market rate).  Upon review of the AIPLA survey evidence, and given the lack of opposition by Plaintiffs, the Court finds Hi-Tech's attorneys' hourly rates reasonable.

### B. Vital

Vital's fee agreement with its attorneys is more complicated than Hi-Tech's.  In October 2016, Vital "entered into a contingency fee arrangement with its attorneys for purposes of moving for attorneys' fees pursuant to 35 U.S.C. § 285." (Vital Fee App. 14.) Before October 2016, Vital's attorneys charged their fixed hourly rates.

### 1. Vital's Fixed Hourly Fees (Before October 2016)

Vital claims hourly rates ranging from $125/hour (for staff) to $400/hour (for

partners).  (*Id.*)  Vital provides the hourly rates and experience of the six attorneys charged for handling this matter.  ("DiGiovanni Decl.," ECF No. 285-1, at 2–3.)  Mr. DiGiovanni (at $400/hour) is a partner with 20 years of experience practicing primarily intellectual property litigation.  (*Id.* ¶ 3.)  Mr. Mulveny (at $400/hour) is a former partner with 15 years of experience practicing primarily intellectual property litigation.  (*Id.* ¶¶ 5–6.)  Mr. Lambert (at $350–$355/hour) is counsel with 11 years of litigation experience and 12 years of engineering experience.  (*Id.*)  Ms. Yang (at $305/hour) is a former associate with 6 years of experience.  (*Id.*)  Mr. Rahmeier (at $250/hour) is an associate with 9 years of experience.  (*Id.*)  Ms. Medina (at $355/hour) is an associate with 3 years of experience. (*Id.*)[4] Vital argues that its rates are 30–50% lower than the median nationwide billing rates presented in the AIPLA *Economic Survey*.  (*Id.* at 16.)

Again, Plaintiffs do not contest these rates.  After reviewing the AIPLA survey evidence and taking into consideration the attorneys' experience and practice levels, along with and lack of opposition from Plaintiffs, the Court finds Vital's counsel's hourly rates reasonable.

### 2. Vital's Contingency Fees (After October 2016)

After October 2016, Vital's attorneys reduced their fees in preparing the fee application and related materials, "in exchange for payment of 25% of any fees award granted by the Court and subsequently recovered." (*Id.*)  Vital's attorneys state they incurred $79,701 in fees, but only charged Vital $39,850.50. (*Id.* at 15.)  Vital's counsel therefore discounted $40,000 in fees under the arrangement, and will gain 25% of the total award (approximately $95,000) —Vital claims these two amounts are "comparable." (*Id.*) It appears that Vital's attorneys are requesting the Court award $39,850.50 for the contingency agreement, and will also be given $95,000 from Vital.  Plaintiffs do not contest anything related to the contingency agreement.

"While 'a contingency agreement cannot be used as a positive or negative multiplier

---

[4] Paralegal "C Rasnick" also appears on Vital's billing records at a rate of $125/hour.

after reasonable fees have been determined . . . [t]he Court may consider a contingency fee agreement when determining [a] reasonable fee to the extent it is representative of the prevailing rate in the relevant community.'" *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1168 (N.D. Cal. 2015) (quoting *Fisher v. City of San Diego*, 12-CV-1268-LAB-NLS, 2013 WL 4401387, at *1 n.1 (S.D. Cal. Aug. 14, 2013)).

Although the Court finds it questionable that counsel will be receiving both the $39,850.50 for the contingency agreement and the approximately $95,000 on top of that, the Court does not evaluate the reasonableness of this situation. Vital will be paying counsel the $95,000—this will not be coming from Plaintiffs. "[N]egotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market." *Id.* at 1167 (internal citations omitted). Therefore, the Court evaluates for reasonableness only the time billed for the $39,850.50 amount.

## II. Reasonableness of Hours Expended

The Court must determine the number of compensable hours Defendants' attorneys (and their staff) reasonably expended on this litigation. In determining the hours expended, courts only award fees for "hours reasonably expended on the litigation" excluding "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433–34. To assess whether the number of hours billed is reasonable, Defendants must submit detailed records justifying the hours that have been expended. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The Court may reduce the hours through its discretion "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; [or] if hours expended are deemed excessive or otherwise unnecessary." *Id.*

### A. Plaintiffs' Objections to Hours Expended

In broad summary, Plaintiffs argue: 1. Defendants are not entitled to any fees because they have not attempted to show which fees relate solely to working on the '459 patent infringement case; 2. Hi-Tech's lawyers have not spent one minute more than they would have working on this case despite the exceptional conduct; 3. Vital's requested fees

should be limited to work on the '459 patent, or, at most, 1/3 of its adjusted fees; 4. Hi-Tech's fees are inflated and unreasonable. (Opp'n to Fee Apps. 9–22.)

### 1. Plaintiff's Objections Relating to the '459 Patent

The Court recognizes that attorneys' fees awarded under § 285 must "bear some relation to the extent of the misconduct." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001). But "[d]istrict courts are not required to tie fees directly to each instance of exceptionality 'because it is the totality of the circumstances,' and not just discrete acts of litigation conduct, that justify the court's award of fees.'" *Large Audience Display Sys., LLC v. Tennmann Prods., LLC*, No. CV 11-3398-R, 2017 WL 2432140, at *1 (C.D. Cal. June 2, 2017) (quoting *Homeland Housewares*, 581 Fed. App'x at 881.) Indeed, if the Court had only found one patent to be invalid, it would be appropriate to apportion the fees accordingly.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . . If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.

*Hensley*, 41 U.S. at 435–36.

To the extent Plaintiffs argue that the Court based its exceptionality finding on the '459 patent alone, this is incorrect. The Court evaluated the totality of the circumstances in finding exceptionality, and did not limit its finding to only the '459 patent.[5] The Court previously found all patents at issue to be invalid. The Court did not find Plaintiffs' pre-filing investigation and litigation conduct related only to one of the patents at issue and thus does not find that the Defendants' attorneys' fees should be limited to the actions taken as to one patent or to any specific product.

---

[5] Additionally, Vital states "*only* the '459 Patent was in the case as to Vital, and thus all of Vital's counsel time pertained to the '459 Patent." (Vital Reply 12.) Vital states "Vital's counsel led the Defendants' successful efforts to invalidate the asserted claim of the '459 Patent and did not participate in the efforts with regard to the other patents." (*Id.* at 8 n.3.)

2.  *Vital's Fees*

Plaintiffs request the Court reduce Vital's fees by 10% given "significant problems" raised in Vital's counsel's billing records. (Opp'n to Fee Apps. 16.)  The Court addresses Plaintiffs' objections in turn.

a.  Work on the "'579 Patent"

Plaintiffs contest Vital's counsel's hours of work on the "'579" patent that has nothing to do with this case.  In reply, Vital states this was a typo and intended to write the "'459 patent".  (Vital Reply 13.)  The Court declines to remove these fees due to a typographical error.

b.  Redactions

Plaintiffs argue Vital's fees include "a slew of inexplicable redactions covering many hours which do not permit the Court to assess whether any of that time actually related to this matter."  (Opp'n to Fee Apps. 15.)  Vital does not explain these redactions except for describing them as "privilege redactions."  (Vital Reply 13.)  Billing records are typically redacted to prevent disclosure of materials protected by the attorney-client privilege or work product doctrine.

When a party has submitted inadequate records, this Court is "neither obligated to explain what type of records should be submitted, nor to request additional information. The burden of presenting the appropriate fee documentation rests squarely on the shoulders of the attorneys seeking the award."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1306 (9th Cir. 1994).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433; *see also Kabos v. Schwan's Home Serv., Inc.*, No. CV-F-9-859 LJO SKO, 2010 WL 3943609, at *5 (E.D. Cal. Oct. 4, 2010) (reducing the fees unsubstantiated by redacted hours).  But if the redacted entries have descriptions that provide sufficient information as to the tasks, the fees can be recovered.  *Jones v. Corbis Corp.*, 489 Fed. App'x 155, 157 (9th Cir. 2012).

In *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004), counsel included entries such as "Counsel call to discuss [REDACTED]" and

"Research Supreme Court case law involving [REDACTED]." The Court found "these redactions do not impair the ability of the court to judge whether the work was an appropriate basis for fees." *Id.* Similarly, here, one of Vital's entries states "review issue of [redacted]; researched caselaw re [redacted]; and finalized memo re [redacted]. (ECF No. 285-3, at 10.) The other redacted entries are similar. Vital is entitled to secrecy about its attorney work product, and the Court is able to review of Vital's counsel's hours spent on privileged matters for reasonableness. Thus, the Court declines to reduce hours based on redactions.

### c. Time Spent on General Education

Plaintiffs argue counsel should not be reimbursed for time spent on familiarizing themselves with local rules, filing procedures, and the like. (Opp'n to Fee Apps. 15.)

The Court agrees. Courts have found that time expended to become familiar with the local rules governing scheduling procedures are in the nature of "general education" and should not be billed to the client. *Sunstone Behavioral Health, Inc. v. Alameda Cnty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1215 (E.D. Cal. 2009). Fees for work that is clerical in nature are considered part of normal overhead costs and are not included in recoverable hours. *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). In *Nadarajah*, the Ninth Circuit identified tasks such as mailing, obtaining transcripts, researching filing procedures, the time spent recording hours worked, and assembling/organizing documents as examples of clerical work that are not billable. *Id.* The Ninth Circuit found "[w]hen clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors." *Id.* This is true even when the work is done by a paralegal. *Id.*

Vital's counsel did spend time becoming familiar with this Court's local rules. (*See* ECF No. 285-3, at 3 (2 hours spent by Ms. Yang reviewing local rules and standing rules); *id.* at 97 (approximately 0.2 hours spent by Ms. Medina researching local rules); *id.* at 165

(same); *id.* at 108 (0.5 hours spent by Mr. Rasnick researching filing procedures)).[6]  The Court removes these fees and reduces Vital's fees by $814.50.

Counsel also spent time organizing binders.  (*See* ECF No. 285-3 at 51 (0.4 hours by Rasnick); 132; (0.5 hours by DiGiovanni); *id.* at 133 (1.1 hours by Rasnick).  Per *Nadarajah*, this clerical time should be removed.  The Court removes these fees and reduces the fee award by $387.50. [7]

### d. Travel Time

Plaintiffs argue the Court should reduce the time billed by a local lawyer located in Los Angeles to travel to attend a hearing in San Diego.  (Opp'n to Fee Apps. 16 (citing ECF No. 285-3, at 109).)  Plaintiffs argue travel time for local attorneys is not billable.  (*Id.* at 16 n.2.)  The Court will address travel expenses (i.e. airfare, taxi cab charges, etc.) in its evaluation of costs below and will remove any unnecessary travel time there.

### e. Time Spent on Motions Vital Lost

Plaintiffs argue Vital should not be reimbursed for working on a motion for summary judgment and judgment on the pleadings motion Vital lost.  (Opp'n to Fee Apps. 16.)  Vital argues the motions, while denied, "formed the basis for trial arguments that resulted in the invalidation of each and every claim asserted by Plaintiffs in this case."  (Vital Reply 13 n.5.)  While the Court has discretion to subtract unreasonable or unproductive time from the lodestar, a party is not required to prevail on every disputed issue to avoid a reduced fee award.  *See Alzheimer's Inst.*, 2016 WL 7732621, at *7 ("[R]ecovery of attorneys' fees is not strictly limited to time spent on winning arguments, but rather includes time spent reasonably by the prevailing party.").  Vital's motions were not meritless, and the Court declines to reduce the award for time spent on the motions.

_____

[6] The Court also finds an example of this in ECF No. 285-3, at 165 (12/7/16 entry by Ms. Medina of 2.2 hours).  Because the Court reduces this entry as block-billing, *see infra* Section II.A.2.g., the Court does not reduce it here.

[7] Plaintiffs also argue the Court should reduce the time spent for "Reexmaination research."  (Opp'n to Fee Apps. 15).  Because there was a total of .25 hours spent on this research, incurring $50, (ECF No. 285-3, at 28), the Court declines to analyze this minor fee.

### f. Work on Co-Defendant's Motion on Laches

Plaintiffs argue Vital's counsel's time spent working "on a co-defendant's motion for laches which had no concern to [Vital]" should be reduced. (Opp'n to Fee Apps. 16.) Vital argues laches is a defense that Vital asserted. (Vital Reply 13 n.5 (citing Complaint ¶ 134, (ECF No. 8 in Case No. 13-CV-1015-JLS (MDD)).) While it is true Vital asserted the defense of laches in its Complaint filed in 2013, Vital has not convinced the Court that the time spent reviewing "GNC's laches summary judgment briefing" and attending "summary judgment hearing regarding GNC's laches motion" in 2016 was necessary. (*See* ECF No. 285-3, at 120, 126.) Thus, the Court declines to award this time by Mr. DiGiovanni (a total of 2.6 hours). The Court reduces the fee award by $1,040.

### g. Block-Billing

Block-billing is "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007). Courts are to "reduce hours that are billed in block format . . . because block billing makes it more difficult to determine how much time was spent on particular activities." *Id.* at 948; *see also Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a district court may reduce hours to offset "poorly documented" billing). But block-billing is permissible where it "involves the grouping of highly related tasks that rarely cover more than a few hours." *Sunstone Behavioral Health*, 646 F. Supp. 2d at 1217. The Court need not reduce hours where entries "are detailed enough for the Court to assess the reasonableness of the hours." *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010). Hours may be reduced if the billing makes it impossible for the Court to determine how much time is spent on each task and thus whether the time spent was reasonable. *See Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 867–68 (N.D. Cal. 2014).

After careful review of Vital's fee records for evidence of block billing, (ECF No. 285-3), the Court concludes that the majority of the attorneys' entries do not pose a "block-

billing" problem.  However, several entries are problematic: ECF No. 28503, at 48 (7/7/14 entry of 5.4 hours); *id.* at 120 (5/10/16 entry of 3.4 hours); *id.* at 134 (7/22/16 entry of 2.7 hours) *id.* at 135 (7/29/16 entry of 8.5 hours); *id.* at 155 (10/12/16 entry of 4.8 hours); *id.* at 165 (12/7/16 entry of 2.2 hours).  Therefore, a reduction to the number of hours expended is appropriate on this basis.

In *Welch v. Metropolitan Life Insurance Co.,* the Ninth Circuit affirmed a district court's authority to reduce block-billed hours by 10 % to 30 %.  480 F.3d at 948; *see also Pierce v. Cty. of Orange*, 905 F. Supp. 2d 1017, 1030 (C.D. Cal. 2012) (noting that it is not uncommon to impose a 5% to 20% reduction for block-billed hours).  The Court finds it necessary to reduce block-billed hours by 10%, the low-end percentage from *Welsh*.  Thus, the Court reduces Vital's fees by $967.50.[8]

### h.  Duplication

The Court finds it necessary to reduce duplicative fees.  Mr. DiGiovanni included two entries on the same day entitled "meet with Dr. Volek and other defense counsel to prepare for trial testimony."  *See* ECF No. 285-3, at 133.  To remove the duplication, the Court reduces Vital's fees by $600.

### 3.  *Hi-Tech's Fees*

Plaintiffs also object to various portions of Hi-Tech's fees.

### a.  Work by Feldman Gale

Plaintiffs argue the attorneys of Feldman Gale were only involved in this matter for 2.5 months (from April to June 2013) and spent 71.5 hours on this case for a total of $24,270.89.  (Opp'n to Fee Apps. 17.)  Plaintiffs argue fees by attorneys involved on such a transient basis should be excluded.  (*Id.* at 18.)

The attorneys at Feldman Gale include Mr. Hillyer, Mr. Feldman, Mr. Frank, Ms. DeAngelis, and Mr. Stahl. (Hillyer Decl. ¶¶ 1–3.)  Each of these attorneys spent less than

---

[8] The calculation is as follows: 5.4 hours by Rahmeier ($250/hour); 3.4 hours by DiGiovanni ($400/hour); 2.7 hours by DiGiovanni ($400/hour) 8.5 hours by DiGiovanni ($400/hour); 4.8 hours by Medina ($355/hour); 2.2 hours by Medina ($355/hour) = $9,675.  10% of this is $967.50.

10 hours each on this case, except for Mr. Frank, who spent 40.6 hours on this case. (*Id.* ¶ 4.)

Hi-Tech argues Feldman Gale was involved in the early stages of the litigation, focusing on the complaint, answer, product analysis, and correspondence with co-defendants. Hi-Tech argues after June 2013, when Feldman Gale left the case, no billing was submitted until January 2014, when Mr. Gallagher and Ms. Posner began working on the case; these attorneys did not spend significant time reviewing Feldman Gale's work. (Hi-Tech Reply 6–7.)

Courts have excluded the hours of those who billed fewer than 100 hours on a matter. *See Courthouse News Serv. v. Planet*, No. CV 11-08083 SJO (FFMx), 2016 WL 9711194, at *7 (C.D. Cal. Oct. 17, 2016) (excluding the hours of 33 timekeepers who billed fewer than 100 hours on the matter "as the 'transient involvement' of attorneys billing minimal time to this matter almost necessarily resulted in inefficiencies"); *Univ. Elecs., Inc. v. Univ. Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1338–39 (C.D. Cal. 2015) (same).

The court in *Kim Laube & Co. v. Wahl Clipper Corp.*, No. CV09-00814 JAK (JCx), 2013 WL 12085140 (C.D. Cal. Nov. 6, 2013), analyzed a similar situation when the representation transfers to a new firm mid-case. There, defendant's case was handled by two associates at the Mayer Brown firm for a six-month period, Mr. Word and Mr. Mackey. *Id.* at *5. Subsequently, defendant's representation shifted to the Barnes & Thornburg firm; neither Mr. Word nor Mr. Mackey transferred to Barnes & Thornburg. "Consequently, the investment in each of them by [defendant] was lost, and those who replaced them at Barnes & Thornburg had to invest time to become familiar with the case." *Id.* Accordingly, the court found it appropriate to award only 50% of the time billed by Messrs. Word and Mackey. *Id.* The court distinguished Messrs. Word and Mackey from others who worked at Mayer Brown. In contrast to Word and Mackey, the other associates at Mayer Brown who worked on the matter, although they too did not transfer to Banes & Thornburg, worked on "focused and unique" issues that did not need to be repeated by the new lawyers. *Id.* at *6. The court found no need to reduce the time spent by these

associates.

Here, the Feldman Gale attorneys worked on the case for only three months in the preliminary stage of the case, and the case was then shifted to Mr. Gallagher and Ms. Posner. (Hi-Tech Reply 6.)   First, the Court finds having five attorneys at Feldman Gale on the matter created some duplicative billing.  It is not reasonable to bill for each attorney's time, each of whom reviewed the Complaint and other pleadings, when the majority of the attorneys each worked less than 10 hours total on this case.  The Court reduces Feldman Gale's fees by 20%.   The Court finds this reduction removes any duplication and still allows recovery for the time the attorneys spent drafting pleadings, memos, and completing research.  Thus, the Court reduces the fee award by $4,854.18.[9]

The Court also finds it appropriate to reduce certain fees to avoid repetition of work when Hi-Tech's representation shifted.  Although Hi-Tech argues Mr. Gallagher and Ms. Posner did not spend "significant time" reviewing Feldman Gale's work, the new attorneys did spend some time reviewing the work.  (*See, e.g.*, Gallager Decl. 4; Posner Decl. 5.)  But it cannot be said that Feldman Gale's work needed to be "repeated" by Mr. Gallagher and Ms. Posner; thus, a reduction of all the time spent by Feldman Gale is not appropriate.  Still, the Court finds it would be duplicative to award both the time spent by Feldman Gale and to award the time spent by Mr. Gallagher and Ms. Posner reviewing Feldman Gale's work.

The Court reduces Mr. Gallagher's hours by 14.5 hours, which is approximately how long it appears Mr. Gallagher spent reviewing Feldman Gale's work and getting up to speed on the case.  (*See* Gallagher Decl. 4.)  Similarly, reduces Mr. Posner's hours by 9 hours. (*See* Posner Decl. 5–6.)  The Court reduces the fee award by $5,510 for Mr. Gallagher and $4,500 for Ms. Posner.

---

[9] The Court also finds this reduction removes any improperly block-billed time.  Although the majority of Feldman Gale's entries do not pose a block-billing problem, a few entries are improperly block-billed. The Court finds an across-the-board 20% reduction properly reduces the fees.

b. Jessica Leach and CL Parker

Plaintiffs argue Ms. Leach and Ms. Parker did not work on this case until after it was closed and only spent time "to recover fees that Hi-Tech never spent on [them]" and claim this is an attempt to "boost up the amount of legal fees after the case was closed from attorneys who never worked on the case." (Opp'n to Fee Apps. 18.) Vital argues it was not attempting to raise fees, as it had no guarantee that fees would be awarded. (Vital Reply 7.) Vital also argues the other alternative was for Mr. Leach to perform the work at a higher rate, and Mr. Leach delegated work in an effort to reduce fees. (*Id.*) The Federal Circuit has specifically approved a district court's finding that attorney time spent on the issue of attorney fees was recoverable. *See Central Soya Co. v. Geo. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *see also Scott Paper Co. v. Moore Bus. Forms, Inc.*, 604 F. Supp. 835, 838 (D. Del. 1984) (recognizing *Central Soya* and holding the court will not reduce "the fee for the reasonable time expended in preparing the elaborate fee application and briefs filed"). Thus, the Court declines to reduce the award for time Ms. Leach and Ms. Parker spent preparing the fee applications for this reason.[10]

Plaintiffs also argue Ms. Leach and Ms. Parker's time entries include block-billing and redactions. (Opp'n to Fee Apps. 18.) The majority of Ms. Leach's entries include lengthy blocks of time. Upon review of the time entries, most are lengthy simply due to the great detail included in the entries, most of which read somewhat like a journal. "While block-billing is less than ideal in providing a complete record to assess reasonableness, adequate descriptions can still make it acceptable." *Gilead Sci., Inc. v. Merck & Co, Inc.*, No. 13-cv-04057-BLF, 2017 WL 3007071, at *8 (N.D. Cal. July 14, 2017). Most entries contain related tasks and the Court is able to review these entries for reasonableness. But

---

[10] Further, Mr. Leach, Ms. Parker, and Ms. Leach's billing records are not presented in an invoice format, (*see* ECF Nos. 284-4, 284-6, and 284-7), and Plaintiffs reasonably question whether the bills were ever submitted to Hi-Tech for payment. In a reply declaration, Mr. Leach declares the billing records "were compiled in bills submitted to Hi-Tech for payment monthly, and have all been paid." ("A. Leach Second Decl.," ECF No. 307-1, ¶ 7.) The Court finds Hi-Tech's counsel has met its burden in proving the invoices have been paid by the client.

the Court finds the following entries problematic: ECF No. 284-7, at 4 (12/19/16 entry of 6.25 hours, covering over ten different tasks, some of which are clerical work such as "made copies"); *id.* at 6 (1/3/17 entry of 5 hours); *id.* at 9 (1/1/17 entry of 5 hours); *id.* at 10–11 (1/9/17 entry of 4.75 hours).

As to the entries of Ms. Parker, the Court finds problematic: ECF No. 284-6, at 4 (10/10/16 entry of 9.25 hours); *id.* at 6 (4/18/17 entry of 8 hours). The Court finds issue with these entries of Ms. Leach and Ms. Parker because the entries cover a lengthy list of tasks. Although these tasks, of course, all relate to the same issue (Hi-Tech's application for attorneys' fees), the entries should have been more precisely documented to reflect the amount of time spent on each task within the block entry. Accordingly, the Court reduces these block-billed entries by 10%. The Court reduces the fee award by $650.53.

### c. King & Spalding

Plaintiffs argue King & Spalding's billing is inflated and unreasonable. (Opp'n to Fee Apps. 18.) Plaintiffs argue these attorneys duplicated the work done by Hi-Tech's "actual trial counsel." (*Id.*) Hi-Tech argues it did not retain King and Spalding until "trial was imminent" and the attorneys' work was limited to drafting the direct examination of Dr. Volek, preparing Dr. Volek for trial testimony, strategizing, and preparing closing arguments. (Hi-Tech Fee App. 7.)

The attorneys at King & Spalding who worked on this matter are Mr. Hawkins, Mr. Blythe, and patent agent Dr. Smythe. (Hawkins Decl. ¶ 2.) The fees charged by King & Spalding totaled $242,920.50. (*Id.* ¶ 5.) The attorneys worked from July 2016 to October 2016. Trial occurred in October 2016, but the attorneys at King & Spalding did not attend. "The participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort." *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989). The Court reviews the billing records to determine if King & Spalding's work was duplicative.

The King & Spalding attorneys spent copious time preparing for the direct examination of Dr. Volek. (*See* ECF No. 284-5, at 5–7 (the majority of the 215.8 hours King & Spalding spent on this matter was spent preparing the direct examination of and

18

"strategy" for Dr. Volek).)  And yet, other attorneys also worked on preparing for Dr. Volek's testimony.  Both Mr. Leach and Mr. Gallagher spent considerable time preparing for Dr. Volek's testimony and meeting with Dr. Volek.  (*See* A. Leach Decl. 7, 11, 12).[11]

While the Court believes the King & Spalding attorneys likely helped Hi-Tech's other attorneys in preparing testimony for Dr. Volek, the Court is not convinced there is no duplication.  "Necessary duplication—based on the vicissitudes of the litigation process—cannot be a legitimate basis for a fee reduction.  It is only where the lawyer does unnecessarily duplicative work that the court may legitimately cut the hours." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1113 (9th Cir. 2008); *see also Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-CV-0541-GPC WVG, 2014 WL 6851612, at *8 (S.D. Cal. Dec. 3, 2014) (reducing fees for duplicate attorney time after finding plaintiffs had not met their burden of proving the hours were necessary).  Plaintiffs request the Court remove the fees billed by King & Spalding in their entirety, but the Court finds at least some of the firm's work was necessary and reasonable in assisting Hi-Tech's other attorneys.  Still, Hi-Tech has not proven all time billed by King & Spalding was reasonable and not duplicative.

Mr. Hawkins billed a total of 142.9 hours on this case; Mr. Blythe billed a total of 168.4 hours.  Dr. Smythe billed a total of 27.6 hours on this case, but because of her unique role as a patent agent, the Court does not find her work was duplicated.  The Court finds it necessary to reduce Mr. Hawkins and Mr. Blythe's fees by 40%.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992) (recognizing that percentage reductions are acceptable tools for courts to fashion reasonable fee awards); *Hanson v. Cnty. of Kitsap.*, No. 13-5388 RJB, 2015 WL 3965829, at *6 (W.D. Wash. June 30, 2015) (reducing requested hours by 33% across the board to account for vagueness, block billing, excessive hours, and duplication of hours).  The Court believes this will remove the duplicative work and allow recovery for King & Spalding's work done on the closing arguments, for which the Court

---

[11] The Court does not document all work Mr. Leach spent on Dr. Volek, but notes almost every billed entry by Mr. Leach in late June 2016 to July 2016 involved Dr. Volek.

does not find evidence of duplication. Thus, the Court reduces the fee award by $48,300.20 for Mr. Hawkins and $44,120.80 for Mr. Blythe, for a total of $92,421.00.[12]

### d. Mr. Gallagher

Plaintiffs argue Mr. Gallagher block-billed his time and worked on matters that had nothing to do with Hi-Tech. (Opp'n to Fee Apps. 20–21.) Upon review of Mr. Gallagher's entries for block-billing problems, the Court finds many problematic entries. While Plaintiffs request the Court trim Mr. Gallagher's hours by 20% overall, the Court finds this would be improper. In the cases cited by Plaintiffs as justification for this request, courts reduced <u>the block-billed entries</u> by a certain percentage, not the fees overall. Therefore, the Court reviewed all of Mr. Gallagher's entries, finding problematic block-billing in, to name a few: Gallagher Decl. 9 (2/21/14 entry of 2.5 hours); *id.* (2/24/14 entry of 4.8 hours); *id.* at 12 (3/5/14 entry of 7.4 hours); *id.* at 17 (4/15/14 entry of 4.7 hours); *id.* at 18 (4/30/14 entry of 6.6 hours); *id.* at 19 (5/1/14 entry of 4.7 hours); *id.* (5/5/14 entry of 5.7 hours). The Court does not list each entry here, but has found Mr. Gallagher's problematic block-billing to encompass roughly 40% of his overall billing.

Mr. Gallagher's block-billing is more problematic than that of Hi-Tech's other attorneys. While the other attorneys listed above billed in blocks of time, for the most part, their blocks were composed of related entries. This is not the case with many of Mr.

_____

[12] The Court also reviewed King & Spalding's entries for internal duplication. On August 2, August 3, and August 4, 2016, Mr. Blythe billed 13.5 hours, 12.5 hours, and 14.0 hours, respectively, to "[a]nalyze trial transcript, including admission of exhibits, demonstratives, elements of testimony, and potential strategies; correspondence with H. Hawkins and A. Leach regarding status and strategy." (ECF No. 284-5, at 10.) The entry is identical on all three days. On those same days, Mr. Hawkins billed 7.8 hours, 7.2 hours, and 5.8 hours, respectively to "[r]eview trial transcript and prepare summary of evidence." (*Id.*) Again, the entries are identical on all three days, except for the third day, where "prepare draft order" is included. (*Id.*) The Court understands all work cannot be completed in one day, and thus it may be reasonable to complete the same task on consecutive days. But, the Court finds the documentation on these days is inadequate to show why these two attorneys spent large blocks of time with copied-and-pasted descriptions, especially considering neither of these attorneys attended the trial. The Court therefore finds it is within its discretion to reduce these fees for these days as duplicative with inadequate documentation. But, to reduce the same fees twice would be, ironically, duplicative. Therefore, the Court finds a 40% across-the-board reduction more appropriate.

Gallagher's entries. For example, Mr. Gallagher billed 4.8 hours to "[r]eview draft document requests, interrogatories and requests to admit to be served on Stanford; analyze standing issue and Hi-Tech's proposed response should ThermaLife file a motion seeking to add Stanford as a party; analyze possible motion to dismiss to accompany an opposition to ThermoLife's motion to amend." (*Id.* at 9.) Given that one of these tasks involves reviewing discovery, but two involve analyzing "possible" situations, the Court cannot determine the reasonableness of the entries when billed in this block format.

While the Court realizes its estimation of Mr. Gallagher's block-billed time may not be exact, to pore over each record would improperly turn the Court into a "green eyeshade accountant," when the "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The Court reduces the block-billed entries by 10%, thus, the Court reduces Mr. Gallagher's fees by $16,667.12.[13]

### e. Mr. Leach

Plaintiffs argue Mr. Leach also block-billed his time, worked on matters having nothing to do with Hi-Tech, billed for non-legal work, and worked on correcting mistakes. (Opp'n to Fee Apps. 21.)

In response, Mr. Leach filed a declaration indicating he "inadvertently included a billing entry" for another case for a total of 15 minutes. (A. Leach Second Decl. ¶ 4.) But in its Reply, Hi-Tech states Mr. Leach's "unrelated entries . . . equate to 1.1 hours of work, or $550." (Hi-Tech Reply 11 n.5.) The Court therefore reduces the fee award by $550 for the unrelated entries.

Mr. Leach also declared that although his bills include non-legal entries such as "filled the car with gas," he did not charge for this time, but only included this so the client would understand the fuel charge. (A. Leach Second Decl. ¶¶ 5–6.) While this may be

---

[13] The calculation is as follows: Mr. Gallagher's total fees were $416,678. (Gallagher Decl. ¶ 5.) The Court reduced 40% of this fee by 10%.

true, to include this in a block-billed entry is problematic. The entry reads "Meeting with John for breakfast followed by continued prep for Dr. Volek at OSU; departed for the airport with John and Tammy, dropped them off, filled the car with gas, returned the rental car and made my flight to Atlanta; call with Jared (17 min)." (A. Leach Decl. 8.) The entry is for exactly 8 hours. (*Id.*) Block-billing an entry with both legal and non-legal tasks, without specifying the time spent on each, does not provide the Court with adequate information to evaluate the time spent on the legal tasks within the block and ensure non-legal tasks are excluded. *See Darling Int'l, Inc. v. Baywood Partners, Inc.*, No C-05-3758 EMC, 2007 WL 4532233, at *5 (N.D. Cal. 2007) (excluding hours claimed for "purely clerical and/or secretarial tasks [transmitting materials to a client, making travel arrangements, copying documents, setting up and taking down a war room, serving documents, coordinating a court reporter, and so forth] for which there should be no compensation").

Thus, the Court reduces this block-billed time, as well a few other entries for the same reasons. *See* A. Leach Decl. 8–9 (6-hour entry which includes legal work as well as "made reservations (hotel and flight)" and "located a great rate for the Westin"); *id.* at 9 (6-hour entry which includes legal work as well as "changed rooms and moved closer to the airport"). Additionally, the Court finds problematic the January 2, 2017 entry of 5 hours as a block-billed entry of unrelated tasks. (*Id.* at 18). The remainder of Mr. Leach's entries, while lengthy and greatly detailed, pose no block-billing problem. The Court reduces the improper block-billed entries by 10%, thus reducing the fee award by $1,062.50.

Plaintiffs also state Mr. Leach spent time correcting errors. (Opp'n to Fee Apps. 21 (citing A. Leach Decl. 14, 18).) In order to remove any duplication due to the attorney's own error, the Court reduces the fee award by 1 hour of Mr. Leach's time, or $425.00.

### f. Ms. Posner

Plaintiffs state Ms. Posner's entries are "succinct and to the point," but argue Ms. Posner also charged Hi-Tech for work done on irrelevant matters. (Opp'n to Fee Apps 22.)

The Court reviewed Ms. Posner's entries for references to unrelated matters. Upon doing so, the Court came across various vague entries. Courts have reduced fee awards for vague entries. *See Santiago v. Equable Ascent Fin.*, No. C 11-3158 CRB, 2013 WL 3498079, at *6 (N.D. Cal. July 12, 2013) ("[T]he work billed for unnamed drafts and telephone calls with unknown parties is too vague to be reviewed."); *Dailey v. Societe Generale*, 915 F. Supp. 1315, 1328 (S.D.N.Y. 1996) (excluding entries for "telephone call," "consultation" and "review of documents" as insufficiently specific to determine whether they were duplicative or excessive). The Court removes as vague: ECF No. 284-2, at 6 (0.3 hour entry entitled "Calls and email to and from counsel re various issues"); *id.* at 5 (approximately 0.5 hour entry for the same task); *id.* at 11 (0.2 hour entry entitled "Further review, edits, etc."); *id.* at 14 (0.2 hour entry entitled "Review expert information"); and *id.* at 17 (0.3 hour entry entitled "Review follow up to JDG call, etc.").[14]

The Court also deducts Ms. Posner's time spent on unrelated matters. Various entries by Ms. Posner refer to the "Better Body Sports action" or to "Gaspari." Neither Ms. Posner nor Hi-Tech has met its burden of proving that entries which appear to have no relation to this matter are reasonably billed. While the Court understands Ms. Posner may have been reviewing other cases for assistance with this matter (for example, it was likely she reviewed the "motion for attorney's fees in the Better Body Sports action" for assistance with the attorneys' fees motion in this case, (*id.* at 11)), the Court finds various entries to be billed without explanation as to their reasonableness. The Court removes: ECF No. 284-2, at 7 (0.1 hour of "Review and analysis of cost bill in Better Body action"); *id.* at 11 (0.1 hour entry, 0.2 hour entry, and 0.1 hour entry of "Review email re status conference setting on Better Body Sports case"); *id.* at 12 (0.1 hour entry of "Review ex parte motion of Gaspari counsel to withdraw," and 0.1 entry related to Gaspari); *id.* at 16

---

[14] While the Court realizes all of these entries are short, the Court finds it would be remiss not to exclude them simply due to their short length, nor can the Court deduct Ms. Posner's bills by 10% overall, as Plaintiffs request.

(0.4 entry of "File substitution of attorney re Formutech").[15]  In total, the Court removes 2.6 hours of Ms. Posner, or $1,300.

### III.    Expert Witness Fees

Vital seeks $21,954.52 in expert witness and consultant fees.  (Vital Fee App. 18.) Hi-Tech does not specify the amount of requested expert fees, but includes it in its request for costs.  (Hi-Tech Fee App. 8.)  Plaintiffs argue Defendants are not entitled to expert fees. (Opp'n to Fee Apps. 22.)

"Section 285 does not provide for the award of expert witness fees."  *In re Electro-Mech. Indus.*, 359 F. App'x 160, 165–66 (Fed. Cir. 2009); *see also Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994) ("Section 285 does not include shifting of expert fees . . . ."). But, "the Court may invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute" provided that the non-prevailing party acted in bad faith or fraudulently.  *Takeda Chem. Indus. Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008); *see iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1380 (Fed. Cir. 2011) (noting that although district courts cannot impose expert fees under § 285, "a court can invoke its inherent power to award such fees in exceptional cases based upon a finding of bad faith" (citations omitted)).

The Court has already reviewed this case under *Octane Fitness, LLC v. ICO Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) and determined the case is exceptional under the totality of the circumstances.  (*See* ECF No. 282.)  The Court has noted that its Order finding exceptionality "was 'based on a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration.'" (ECF No. 315 (quoting *Checkpoint Sys. Inc. v. All-Tag Sec.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017)).)  The "purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Mathis*,

---

[15] While the Court understands Formutech was another Defendant in this matter, Ms. Posner has not met her burden of explaining why it is reasonable to bill Hi-Tech for this action.

857 F.2d at 755 (emphasis and quotation omitted).  Thus, the Court finds it appropriate to award expert fees in this case.

## IV.    Costs

Vital requests $34,424.38 in costs and expenses "associated with photocopying, PACER searches, computer assisted research, telecommunications services, expert witness / consultant fees, postage and express delivery service expenses, travel expenses, and books and publications."  (*Id.* at 17.)  Removing expert fees, addressed above, Vital requests $12,469.86 in costs.  Hi-Tech requests $27,306.52 in "costs and expenses associated with photocopying, charges via PACER, computer assisted research, telecommunication services, expert witness / consultant fees, postage and express delivery service expenses, and travel expenses." (Hi-Tech Fee App. 8.)  Plaintiffs argue Defendants should be granted only a portion of their costs. (Opp'n to Fee Apps. 22)

Section 285 refers only to attorney fees and does not mention costs.  But, the Federal Circuit has held that costs can be awarded under § 285.  *Central Soya Co., Inc. v. Geo. A. Hormel & Co*, 723 F.2d 1573, 1578 (Fed. Cir. 1983).  Thus, the issue is the reasonableness of the costs.

In reviewing each Hi-Tech's requested costs, the Court finds instances of duplication.  This is true especially in travel expenses.  "With respect to long-distance travel for out-of-state attorneys, courts generally do not allow fees for such time absent a showing that recovering for travel time is customary in the particular facts of the case."  *Zest IP Holdings*, 2014 WL 6851612, at *10.  Courts in this district "are reluctant to award fees for traveling to a hearing where an insufficient showing has been made that local counsel alone could not have attended and/or the out-of-state counsel could not have attended telephonically."  *Id.*

Various defense attorneys traveled to San Diego and other locations for hearings, meetings, and trial. Mr. Gallagher and Mr. Leach both attended trial in July and August 2016.  Mr. Leach, Mr. Gallagher, Mr. Hawkins (all for Hi-Tech) and Mr. DiGiovanni (for Vital) all met with Dr. Volek in Ohio in July 2016 to prepare for trial.  The Court finds Hi-

25

Tech has not met its burden of proving why three of its attorneys needed to travel to Ohio to meet with the expert. *See id.* (reducing travel expenses because "[p]laintiffs have not established that recovery for attorney travel time is customary under the particular facts of the case"). Hi-Tech did not provide any details as to how much its counsel incurred in travel expenses specifically. Thus, the Court reduces Hi-Tech's cost award by $8,703, which is approximately the cost of Mr. Gallgaher's travel to Ohio, as well as for his time spent in Ohio. (*See* ECF No. 284-3, at 67–68.) The Court does not find it necessary to reduce Vital's travel costs.

Further, the Court finds there is naturally some duplication due to Hi-Tech's various attorneys on the matter. It is important to note that Hi-Tech had various groups of attorneys working on this matter; Feldman Gale, King & Spalding, and the main lawyers, including Mr. Leach and Mr. Gallagher. Hi-Tech has not provided a detailed list of costs for the Court to review, only providing a final number. Due to the lack of explanation as to the costs, the Court finds there has been a duplication in costs such as photocopying and legal research by the various firms working on this case over time. Thus, the Court reduces the requested costs, minus the fees already subtracted out above, by 10%.[16] The Court reduces Hi-Tech's fees by $1,898.35.

On the other hand, Vital has met its burden in proving its costs were reasonably incurred. (Vital Fee Apps. 17.) Vital divided its costs by topic, and the Court finds these costs were reasonable and necessary.

/ / /

/ / /

/ / /

---

[16] The Court finds it is important to note that it is well within its discretion to reduce all requested fees by 10%. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation."). The Court does not do so, but is therefore within its discretion to reduce costs by 10%.

## V.    Interest

Vital seeks $68 per week in post-judgment interest from April 4, 2017 until payment is made by Plaintiffs, as well as $15,160.36 in prejudgment interest. (Vital Fee App. 7 & n.1.) Hi-Tech adopts this argument.  (Hi-Tech Fee App. 8.)

"Under 28 U.S.C. § 1961(a), interest is allowed on money judgments in civil cases recovered in a district court accruing from the date of the entry of the judgment.  Courts have interpreted this to mean that post-judgment interest is calculated 'from the date of the judgment establishing the right to the award.'" *Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd.*, No. C 08-4567 CW, 2012 WL 1577365, at *3 (N.D. Cal. May 3, 2012) (internal citations omitted); *see also Mathis*, 857 F.2d at 759–60 (awarding post-judgment interest in a patent case, noting that "[t]he provision for calculating interest from entry of judgment deters use of the appellate process by the judgment debtor solely as a means of prolonging its free use of money owed the judgment creditor").  Additionally, a court has the authority to award pre-judgment interest on an unliquidated sum made under Section 285 in cases of "bad faith or exceptional circumstances." *Mathis*, 857 F.2d at 761.  The Court has noted above its finding of bad faith.  "There is no applicable federal statute establishing a prejudgment interest rate." *Gust, Inc. v. Alphacap Ventures, LLC*, 15cv6192 (DLC), 2017 WL 2875642, at *7 (S.D.N.Y. July 6, 2017).

Plaintiffs do not contest Defendants' request for post-judgment interest.  The Court grants post-judgment interest from April 4, 2017, the date the Court determined that this case was exceptional and fees were appropriate.  (ECF No. 282.)  "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."  28 U.S.C § 1961.

On the other hand, Plaintiffs <u>do</u> contest Defendants' request for pre-judgment interest.  The Court finds pre-judgment interest is warranted due to the Court's finding of bad faith.  Vital requests $15,160.36 in prejudgment interest.  (Vital Fee App. 13.)  Hi-Tech does not specify an amount.  (Hi-Tech Fee App. 8.)  Prejudgment interest shall be

calculated using the prime interest rate compounded quarterly. *See Ill. Tool Works, Inc. v. MOC Prod. Co.*, No. 9-CV-1887 JLS (MDD), 2013 WL 12064544, at \*8 (S.D. Cal. Oct. 25, 2013) (applying the prime rate); *Idenix Pharm. LLC v. Gilead Sci., Inc.*, No. 14-846-LPS, 2017 WL 4216993, at \*9 (D. Del. Sept. 22, 2017) (same). Given that the interest depends on the appropriate rate and the date of payment, the Parties **SHALL** confer on the appropriate amounts of pre-judgment and post-judgment interest rates to be paid, based on this Order and the date of payment by Plaintiffs.

## VI. Supplemental Fees

At last, the Court reaches the supplemental fee applications filed by both parties, (ECF Nos. 299, 311.) Vital states from the date it filed its original application (on April 18, 2017) to the date it filed its supplemental application, it incurred an additional $27,249.50 in fees and $396.51 in costs.[17] (Vital Supp. Fee App. 4.) Hi-Tech requests $22,493.75. (Hi-Tech Supp. Fee App. 2.) The Court reviews both for reasonableness.

### A. Vital

Plaintiffs argue Vital's counsel spent 12.4 hours making corrections to the initial fee petition. (Opp'n to Vital Supp. 2.) Plaintiffs also argue Vital's 27.7 hours in drafting a 10-page reply brief is excessive. (*Id.*) Vital agrees it spent 9.6 hours to prepare the corrected fee petitions, but argue these fees are recoverable. (Vital Supp. Reply 2.)

The Court finds it would be unreasonable to allow Vital to recover for time its attorneys spent correcting their own mistakes. Although Vital determined it spent 9.6 hours preparing the corrected petitions, to do so was a rough estimation based in part on Ms. Medina's block-billing. (*See* Vital Supp. Reply 2 n.1.) The Court rounds this to 10 hours and reduces the fee award by $3,505. The Court finds no other issue with Vital's supplemental fees.

---

[17] Vital also states it incurred $3,571.08 in prejudgment interest, but the Court does not include this in its analysis here.

### B. Hi-Tech

Plaintiffs argue Hi-Tech's attorney's billing 110.75 hours in 2 months is excessive. (Opp'n to Hi-Tech Supp. 2.) The Court finds some duplication in three attorneys working on this short-term matter. For example, both Ms. Parker and Ms. Leach have an entry indicating they both drafted the section of the opposition to Plaintiffs' motion for reconsideration "relating to compensation and deterrence oriented goals." (ECF No. 311-2, at 4; ECF No. 311-3, at 4.) This duplication was not evident in Mr. Leach's work, as he was the senior attorney reviewing the work, but there was some overlap on the part of the two associates. The Court therefore reduces both Ms. Leach and Ms. Parker's fees by 40%, or $7,882. The Court finds this reduction also covers any unnecessary time spent on preparing the unsuccessful motion for leave to file excess pages and all related tasks. (*See* ECF No. 311-2, at 4.)

## VII. Conclusion

### A. Vital

In sum, Vital requests $382,641,99 in its first fee application. This is composed of: $293,206.75 in fees billed to the client, $39,850.50 in fees through the contingency award, $34,424.38 in costs, and $15,160.36 in prejudgment interest. Vital then requests $31,217.09 in its supplemental application, for a total of $413,859.08.

The Court removes the request for pre-judgment interest from the calculation and asks the Parties to confer on this issue. Therefore, Vital requests: <u>$395,127.64</u> in fees and costs. Given the Court's above reductions, the Court **AWARDS** Vital: **$387,813.14.** This does not include pre-judgment or post-judgment interest.

/ / /

/ / /

/ / /

13-CV-651 JLS (MDD)
(LEAD CASE)

### B. Hi-Tech

Hi-Tech requests $991,744.52 in its first application, and an additional $22,493.75 in its supplemental application for a total of <u>$1,014,238.27</u>. Given the Court's above reductions, the Court **AWARDS** Hi-Tech **$867,814.59.** This does not include pre-judgment or post-judgment interest.

**IT IS SO ORDERED.**

Dated: January 8, 2018

Hon. Janis L. Sammartino
United States District Judge

13-CV-651 JLS (MDD)
(LEAD CASE)